Atlantic Coast Line Railroad Company and Tampa
Southern Railroad Company v. J. B. Saffold.

178 So. 288.
Opinion Filed January 12, 1938.

*T. Paine Kelly,* for Plaintiffs in Error;
*Hampton, Bull & Crom,* for Defendant in Error:

PER CURIAM.—The writ of error herein was taken to a judgment awarding $2,000.00 damages for alleged injury to land caused by overflow of surface water resulting from obstruction of natural passage of heavy rain water by a railroad embankment with insufficient culverts to let the water pass under and through the railroad embankment.

The first count of the declaration alleges: "that through" the plaintiff's described land "* * * is a natural watercourse or natural drain, by means of which during heavy rains and particularly during the rainy season in Florida, when precipitation is of great volume and suddenness, the said natural drain or basin above described acts as a drainage bed for the lands of plaintiff and others, and when allowed to flow unimpaired and uninterrupted has always been ample for the carrying off of water falling upon the lands of the plaintiff and adjoining lands even during said rainy season, the direction of the flow being to the northward and over the defendants' right-of-way; that although the flow from said lands and through said natural drain was excessive during the season of heavy rains, the said natural drain, if left unimpaired and undisturbed, would be and was always sufficient for the carrying of of said water flowing at said time and place upon the plaintiff's said land.

"* * * that the defendant * * *in the building of said roadbed, constructed a certain culvert by means of two pipes placed under the right-of-way of the defendant, which said pipes have been kept and maintained by the defendants for a long period of time, although the defendants well knew that in time of excessive rain said pipes were not sufficient in circumference to permit the regular flow of water through and upon the drainage bed above described, and negligently and carelessly permitted said drain pipe or pipes to be surmounted by solid embankments of earth which in effect formed a dam over and across said water course and

caused the water which otherwise. would have flowed through said water course to back up, overflow and flood the plaintiff's land on or about the 3rd day of September, 1935, and for a long period of time thereafter.

"* * * that by. the wrongful acts of the defendants in damming up said water course, the lands of the plaintiff have been overflowed and damaged; that a large amount of water has been permitted to flow westwardly over the lands of the plaintiff into the Little Manatee River, which adjoins the plaintiff's land on the west, thereby causing plaintiff to lose a large amount of soil from his said land, of the value of approximately \$3,000.00, and plaintiff has in addition been compelled to expend a large amount of money, approximately \$2,000.00, in the rebuilding and filling in of divers and sundry gullies or holes and washouts in his said land caused by the overflow aforesaid."

There was a plea of not guilty and a special plea averring: "that at the time and place mentioned in the plaintiff's declaration, these defendants maintained and continued certain drain pipes under their right of way, and that the said drain pipes were large and sufficient to accommodate all the water which naturally and ordinarily flowed through their said right of way and under their said railroad embankment due to the accumulation of rain water, and that said pipes were sufficient at all times to accommodate accumulated water after ordinary rains and rains which the defendants could reasonably predict, but that at the time and place mentioned in the plaintiff's said declaration, there had been and was continuing to be a period of unprecedented rainfall, during which time rain water fell and was accumulated upon and near the right of way of the defendants that was greatly in excess of the ordinary rainfall in that vicinity for any period of the year, and that the rainfall at that time and place was much greater than could have been reason-

ably anticipated by the defendants, and the diversion of the water which ordinarily and under normal conditions flowed easily through the said pipes on the right of way and under the embankment of the railroad companies, was due to the great quantity of water that had accumulated, and was not due to the failure of the defendants to provide adequate drainage for the rain water ordinarily accumulating at any period of the year on the right of way of the said defendants."

A contention is that there was error in admitting in evidence photographs of the railroad embankment showing the two culvert pipes through the embankment, taken after the embankment had been partially removed for repairs, portraying the appearance and condition of the embankment to be materially changed from its appearance and condition on the date of the alleged diversion. The picture showed the culvert pipes in the position in the railroad embankment as they were at the time of the overflow; and as the use of the pictures was expressly confined to showing the condition of the culvert pipes and not of the entire embankment at the time of the injury complained of, no harmful error is shown.

The damages alleged in the declaration are the loss of a large amount of soil washed from the land and large amounts of money spent in rebuilding and filling in of divers and sundry gullies or holes and washouts in the land caused by the overflow.

At the request of the plaintiff and over the objection of the defendants, the court gave the following instruction to the jury:

"Should you find for the plaintiff in determining his damages, you may take into consideration the nature and probable consequences of the defendants' act which include damages for the repair and rebuilding if any, of the plaintiff's property, the value of the land washed away if any,

the interference with plaintiff's possession of his said land and the reduction if any, in the value of his land by said overflow. All of these elements may be considered by you in arriving at your verdict."

When an injury is to land and the injury is of a more or less permanent nature, the usual measure of damages is the difference between the value of the land before and after the injury. 67 C. J. 895-6. If property on the land is injured or destroyed, the measure of damages is the value of the property injured or destroyed. 51 C. J. 1135.

If the damages alleged in the declaration are not double, the quoted charge of the court clearly permits a recovery for several elements of damages to the land and also "the reduction if any, in the value of his said land by said overflow." Double damages are not legally recoverable. See 17 C. J. 884; 67 C. J. 895.

Assuming, but not deciding, that the evidence shows the injury to the plaintiff's land was proximately caused by the negligent failure of the defendants to have sufficient culvert space to allow unusually heavy rainfalls to pass under the railroad embankment, and not by an unprecedented rainfall that could not reasonably have been anticipated to require larger culverts, the error in the charge as to the measure of damages for the injuries alleged, reasonably may have influenced the rendition of a verdict for a larger amount than otherwise would have been determined upon; therefore, the judgment is reversed and the cause remanded for a new trial.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.