CARROLL, Judge.
The appellees Wayne L. Dunagan and Iva Dell Dunagan sued the appellant Standard Oil Company of Kentucky to recover for damage to property caused by leakage of gasoline from a defective tank installed *623 thereon by the defendant. Liability was determined against the defendant oil company by summary judgment, and a non jury trial on damages resulted in a judgment against the defendant for $65,000, from which the defendant took this appeal.
The property involved consisted of ten acres of land in the unincorporated area of Dade County, improved by a residence and other buildings and a grove. It constituted the home of the plaintiffs. The water supply was from local wells. Plaintiff engaged the defendant Standard Oil Company to install a gasoline storage tank on the property. The tank was defective, with the result that gasoline with which the tank was filled drained out. The .underground water on the property was affected accordingly.
The complaint gave the legal description of the property and alleged “that the said real property is improved with' orchards, warehouses, a residence, swimming pool, roads, sheds, buildings and growing crops.” Regarding the defective gasoline tank, the complaint alleged as follows:
“11. That as a result of the said installation of the aforedescribed defective equipment, large quantities of gasoline, purchased by the Plaintiffs from the Defendant, and placed into the equipment for storage, did leak out onto, into and throughout the above described land.
“12. That as a result of the afore-described leakage of gasoline, and proximately caused thereby, the entire water supply underlying the above described real property has become contaminated, polluted and spoiled and unfit for any normal use, including drinking, cooking, washing, swimming or industrial uses; that as a result of the aforesaid pollution and spoilage of the water supply underlying the above described real property, and said real property has been rendered unfit for habitation or use, and the value of all buildings, residences, pools, sheds, warehouses, orchards and crops heretofore existing on the above real property has been destroyed except for salvage value.
“13. Plaintiff is informed and does believe that the pollution of the above described water supply, and the damage proximately resulting therefrom is permanent.”
In answer the defendant relied on a document signed by plaintiffs upon or after installation of the tank, by which defendant contends that the plaintiffs indemnified defendant from loss resulting from the tank installation, including the claim of loss asserted by plaintiffs in this case.
Motions for summary judgment were filed by both parties. Plaintiffs’ motion was supported by depositions describing the transaction and bearing on whether the instrument relied on by defendants was an indemnity contract as contended by defendant, or a receipt as claimed by plaintiffs. Defendant’s motion was denied and the plaintiffs’ motion was granted. A partial summary judgment was entered establishing liability on the defendant'. On this appeal the defendant-appellant challenges that ruling, and contends the damages allowed are excessive.
We affirm the ruling of the trial court granting partial summary judgment in favor of the plaintiff on liability. On this record the trial judge committed no error in holding that the instrument, which appellant claims contained language relieving it of liability for damages, was a receipt and not an undertaking on the part of the plaintiffs to indemnify the defendant. The instrument was so drawn that it could be used as a receipt or as a contract of sale or loan or other transfer. The evidence before the court on plaintiffs’ motion for summary judgment showed without genuine issue of fact that the instrument here was intended and used as a receipt. Other facts upon which liability depended were not in dispute.
 However, on consideration of the record and briefs we are in agreement with *624 the contention made by the appellant that the amount of damages awarded was excessive. The allowance made by the trial judge, on hearing the matter without a jury, is entitled to the weight which would be accorded to a jury’s assessment of damages. And we observe the principle that an appellate court should not substitute its view of the amount of damages for that which was arrived at by the trier of the facts, and that such an assessment of damages, when challenged as being excessive, should stand unless excessiveness is shown on the record. In this case the record discloses the exces-siveness. This is so because the record was lacking in evidence, applicable to the proper measure of damages, to prompt or support the damages allowed, which amounted to three fourths of the value of the property.
For the injury to the property which the trial court found was permanent, the measure of damages was the difference between the value of the property before the injury occurred and the value afterward. Atlantic Coast Line R. R. Co. v. Saffold, 130 Fla. 598, 178 So. 288, 9 Fla.Jur., Damages § 64; 25 C.J.S. Damages § 84.
Here evidence was presented of the value before the injury, of the land and of the improvements. Also, there was evidence as to the value of the land afterward, but none as to the value of the buildings. The grove appeared to be unaffected.
An appraiser called as a witness for plaintiffs testified that the value of the property as improved, at the time of the damage thereto, was $87,760. That was the aggregate of the values he gave to the land and the buildings. He placed a value of $40,-000 on the land, plus $1,500 for hard surfaced roadways thereon. He valued the buildings at $46,260. His testimony as to the value of the land after the injury to the property was that it would be worth one half or approximately $20,000. As stated above, no figure was given in evidence as to the value of the buildings after the damage.
As applied to the proper measure of damages, $20,000 of the verdict could be assigned to loss in value of the land. That would require allocation of $45,000 of the total damages of $65,000 to loss in value of the buildings, which prior to the damage to the property were valued at only $46,250. We conclude that not only was the verdict arrived at without evidence directed to the difference in the value of the improved property which was the proper measure of suchi damages, but if the appraiser’s criterion of loss of one half value of the land should be extended to the improvements, the allowance of $65,000 damages appears grossly excessive.
Diminished enjoyment or use of the property by the plaintiffs as a result of the damage to their water supply is not an element of damage to be added to the loss of value of the property. Such matters should be taken into consideration in determining the loss of value, otherwise they would result in duplication of damages as held in Atlantic Coast Line R. R. Co. v. Saffold, supra, 130 Fla. 598, 178 So. 288, 290. Thus it is said in 25 C.J.S. Damages § 84, at 607:
"Double damages, of course, are not legally recoverable for injuries to realty. Plaintiff cannot have a recovery for permanent depreciation of the value of his premises, and also for the cost of restoration to their former condition. So, where damages, because of the diminished enjoyment or use of the property, are claimed and also damages for permanent injury, the two awards must not be allowed to overlap. * * * ”
Moreover, in determining the effect; on the value of the property occasioned by the leakage of gasoline, there should be taken into consideration the possibility or probability of obtaining good water from parts, of the property or from other sources such as from adjoining property or, in the future, from a public water supply. Here, after the-gasoline leakage, two new wells were sunk_ In one the water became affected after a. *625 short time. Another well, sunk by defendant approximately 150 feet north of the place where the tank was located, produced uncontaminated water, but the plaintiffs did not connect to it or make use of it. There was opinion evidence that the second well would go bad, but the record is not clear on its outcome. The trial court’s finding that the contaminated water extended under the entire property was supported by opinion evidence, and not from the sinking of wells or other actual tests. The limited efforts to obtain good water fell short of conclusive or exhaustive tests. For example, there was evidence that there was a natural flow of the water under the ground in a southerly direction. It was contended on behalf of the defendant that would indicate a probability of good water available on the north part of the property. That theory, though met in evidence by opinion to the contrary, was not dispelled by actual tests. The uncertainty thus suggested shows the speculative nature of an estimate of permanent loss of value under the circumstances.
We hold, therefore, that the award of $65,000 damages was excessive and without adequate supporting evidence under the applicable rule of damages. In our opinion the interests of justice would best be served by a new trial on the issues relating to damages, either before the court or before a jury as the trial court shall determine.
Accordingly the ruling granting summary judgment on liability is affirmed, but the judgment appealed from is reversed and the cause is remanded to the circuit court for new trial on damages.