352 So.2d 892 (1977)
UNITED STATES STEEL CORPORATION and P.S.A. Enterprises, Inc., Appellants,
v.
J.C. BENEFIELD and Mary J. Benefield, Appellees.
Nos. 76-751, 76-760.
District Court of Appeal of Florida, Second District.
November 18, 1977.
Rehearing Denied December 27, 1977.
*893 John R. Lawson, Jr. of Holland & Knight, Tampa, and Tom Y. Sawyer of Edwards, Sawyer & White, Plant City, for appellants.
Michael J. Freedman of Levine, Freedman & Hirsch, Tampa, for appellees.
McNULTY, JOSEPH P. (Ret.), Associate Judge.
We determine this day the appropriate measure of damages for injury to real property occasioned by breach of contract when the cost of restoration of the property exceeds the diminished value of the injured land.
The land in question involves 26 acres of a 750 acre tract owned by the Benefields which was part of a phosphate mine operated in Hillsborough County in the 1930's and 1940's. In the course of mining phosphate in those days a residue of phosphate mineral was deposited in piles on the land as a by-product of the mining operation. In the phosphate industry this was and is referred to as "debris" or "tailings." Through the 30's and 40's these tailings were a waste by-product because technology at the time was not sufficiently advanced to permit feasibly the recovery of the total product from this waste. Subsequently, and before the times material herein, techniques were developed to make full recovery profitable.
With this state of affairs in the phosphate industry in mind, the Benefields in 1973 purchased the whole tract herein and appellant United States Steel ultimately acquired the rights to remove the "tailings" or "debris" within 160 acres thereof. Since the land had previously been mined, and had remained unreclaimed, its topography included vast pits, holes and piles of dirt and tailings. It is significant, therefore, that the contract permitting the removal of the tailings contained a prohibition against removal thereof "below original ground level."
It may be surmised, at this point, that this prohibition gave rise to the underlying dispute herein. The Benefields argued that the term "original ground level" meant the natural level of the ground before any mining at all began back in the 1930's, while United States Steel interpreted the term so as to mean the level of the ground upon which the tailings were piled whether such level was below the original natural ground level or not. The trial court found, properly we think,[1] that as used in the contract between the parties hereto the term meant the original, natural ground level as it existed prior to the commencement of any mining operations at all.
As may be further imagined, with respect to the 26 acres in question the court found, and there was sufficient evidence to support it, that United States Steel ultimately removed 129,977 cubic yards of tailings below the original natural ground level, 12,997 cubic yards of which represented marketable phosphate. Based on these findings he awarded $50,691 for the value of the phosphate removed and $327,543.30 necessarily to be expended for fill dirt to restore the land to the original natural ground level. This appeal ensued.
Appellant's primary thrust is that the trial court erroneously interpreted the term "original ground level," but we have hereinabove noted that the court was correct. We say here, too, that appellant has failed to demonstrate reversible error with respect to the finding of a breach on its part of the contract herein. We would agree with appellant, however, that the trial court applied a wrong measure of damages in computing the award.
First, as to the $50,961 representing the value of the phosphate removed from below "original ground level," there is no real dispute. Given the wrongful removal of that phosphate, the award was amply supported by evidence in the record.
*894 But concerning the remaining $327,543.30, this amount was computed from an erroneous measure. Generally, with respect to wrongful injury to real property, there are two rules of damages: (1) the so-called "diminution in value" rule, which is the difference between the value of real property before and after the injury; and (2) the cost of repairing or restoring the property to its condition prior to the injury, usually referred to as the "restoration" rule.[2] Often times, the damages will compute out the same under either rule. But there are those cases in which there would be a considerable disparity between the amounts determined by the two rules. This case obviously falls in the latter class.
To begin with, the Benefields purchased the main 750 acre tract herein in 1973 and paid approximately $466 per acre. As noted, only 26 acres of this tract were injured; and to restore or repair these 26 acres, using the figures as found by the trial court, it would cost $13,084 per acre. The disparity is patent.
Under these circumstances, while there is some conflict in authority, the general rule appears to be that the cost of restoration will not be awarded if it is more than the diminution in market value.[3] This is particularly true in those cases in which the injury to the land results in subsidence or other severe damage caused by mining operations.[4]
Some of the cases around the country, however, Florida apparently among them,[5] consider significant the distinction between permanent injuries and temporary or reparable injuries, the measure in the former class generally being the diminution in value rule and in the latter the cost of restoration rule.[6] Often times, though, the question of permanency goes begging. With respect to buildings and improvements which have a value separate from the land, the determination of permanency is relatively easy. But due largely to the fact that land itself can never really be completely destroyed, a clear definition of permanent injury to land becomes more difficult.
Under the facts here, however, we think no such distinction need be made. Looking to the reason why a distinction is made in the first place and why, when the injury is temporary, the restoration rule is generally applied, the rationale appears to be that if the diminution of value rule were to be applied when the cost of restoration is less the plaintiff would be overcompensated in that he would enjoy recovery of the decreased value of the land and then be in a position to repair the damage at the lesser cost, thus making a profit on the difference.[7] On the other hand, it seems clear that if the cost of restoration grossly exceeds the diminution in value the fear of a plaintiff's windfall could not materialize. Accordingly, there are those cases which under such circumstances apply the diminution in value rule even though the injury complained of is temporary or reparable.[8] The injury is deemed, in effect, permanent.[9] We think this is the sounder approach.
We hold, therefore, that with respect to damages for wrongfully injured real property, where, as here, the cost of *895 restoration or repair so greatly exceeds the diminution in value of the land that there is no reasonable likelihood that the plaintiff would be overcompensated by a double or overlapping recovery, no determination need be made as to permanency. The injury will be deemed permanent as a matter of law; and the measure of damages therefor is the diminution in value because of the injury.[10] This measure is appropriate, moreover, notwithstanding the uniqueness of real property or the desires of the plaintiff with respect to a prospective or intended use, and even though the property may be totally destroyed and cannot reasonably be used for that purpose. In the latter case, its full value undamaged is the measure,[11] which conceivably could be the case here.[12]
In view whereof, the judgment appealed from should be, and it is hereby, affirmed with respect to the award of damages in the sum of $50,691 representing the value of the phosphate wrongfully removed from the property in question. With respect to the additional amount of $327,543.30 awarded for the cost of restoring the injured property, the judgment should be, and it is hereby, reversed; and the cause is remanded for further proceedings deemed appropriate to determine the amount of damages payable to appellees under the diminution in value rule discussed herein.
Affirmed in part; reversed in part.
SCHEB and OTT, JJ., concur.
NOTES
[1] It appears the term is clear and unambiguous on its face and thus not amenable to parol. But the court took testimony anyway and came to the same conclusion. We accept that.
[2] See 22 Am.Jur.2d Damages § 132 at p. 191.
[3] Id. at p. 192.
[4] Anno. 135 A.L.R. 1142.
[5] See Atlantic Coast Line R. Co. et al. v. Saffold, 130 Fla. 598, 178 So. 288 (1938); Standard Oil Co. v. Dunagan, 171 So.2d 622 (Fla. 3d DCA 1965).
[6] See 22 Am.Jur.2d Damages § 135 at p. 196.
[7] See Phillips v. Chesson, 231 N.C. 566, 58 S.E.2d 343 (1950); Texas Electric Service Company v. Linebery, 333 S.W.2d 596 (Tex.Civ. App. 1960).
[8] See, e.g., Alesko v. Union Pac. R. Co., 62 Idaho 235, 109 P.2d 874 (1941); Hartshorn v. Chaddock, 135 N.Y. 116, 31 N.E. 997 (1892); Ellison v. Walker, 281 P.2d 931 (Okl. 1955); Rabe v. Shoenberger Coal Co., 213 Pa. 252, 62 A. 854 (1906); Burr v. Clark, 30 Wash.2d 149, 190 P.2d 769 (1948). Also cf. General Outdoor Advertising Co. v. LaSalle Realty Corp., 141 Ind. App. 247, 218 N.E.2d 141, 151 (1966).
[9] See Anno., 1 A.L.R.3d, § 3b, p. 807.
[10] See n. 5, supra.
[11] See, e.g., Missouri Pacific Railroad Company v. Clements, 225 Ark. 268, 281 S.W.2d 936 (1955); Boise Valley Const. Co. v. Kroeger, 17 Idaho 384, 105 P. 1070 (1909).
[12] We emphasize here that we are concerned only with compensatory damages and not punitive damages assessable for willful, intentional or gross invasion of property rights. The latter may well exceed the full value of the land.