441 So.2d 674 (1983)
Earnest CLARK and Katherine Clark, His Wife, Appellants,
v.
J.W. CONNER & SONS, INC., and Aetna Casualty & Surety Co., Appellees.
No. 82-2620.
District Court of Appeal of Florida, Second District.
October 21, 1983.
Rehearing Granted in Part and Denied in Part December 7, 1983.
*675 Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, and Beckham & McAliley, P.A., Jacksonville, for appellants.
Michael A. Tonelli of Barr, Murman & Tonelli, P.A., Tampa, for appellees.
GRIMES, Acting Chief Judge.
This appeal involves the assessment of damages resulting from a trespass on land.
Mr. and Mrs. Clark (Clarks) owned approximately eight acres of undeveloped real property in Hillsborough County. In 1979 J.W. Conner & Sons, Inc. (Conner), a road contractor, was engaged nearby in the construction of the Crosstown Expressway. An owner of land which adjoined the Clarks' property gave Conner permission to build a road across his property in order to reach a borrow pit. By mistake Conner built the access road across three acres of the Clarks' property. Though the Clarks were aware of this activity in 1979, they did not realize that the road crossed their property until 1981 when they obtained a survey. At this point, the Clarks gave Conner's employees a copy of the survey and ordered them off the property. After a week Conner ceased using the road.
The Clarks brought suit against Conner and its insurer for compensatory and punitive damages occasioned by the trespass. Prior to trial the court ruled that the measure of compensatory damages would be the difference between the value of the land before the harm and the value after the harm. Notwithstanding, at trial the Clarks did not present any evidence of the before and after values of the land. They did, however, introduce evidence that to remove the large piles of trees and debris from the land would cost $8,514 and that to fill in the property and restore it to its original grade would cost $24,084. The court refused to permit the Clarks to introduce evidence of the value of the trees which were destroyed on the land.[1] To protect the record the *676 Clarks proffered the testimony of a landscape architect that the value of the destroyed trees was $85,144.21.[2] At the close of the Clarks' case, the court granted Conner's motion for directed verdict on punitive damages. Upon Conner's motion, the court also limited the Clarks' claims for compensatory damages to the cost of removing the debris from the land. At this point the parties agreed to the entry of a judgment against Conner and its insurer for the $8,514 cleanup expenses without prejudice to the Clarks' right to appeal the court's ruling on the other elements of damage.
As a general rule the measure of damages in Florida for permanent injury to land is the difference between the value of the land before and after the injury. Atlantic Coast Line Railroad v. Saffold, 130 Fla. 598, 178 So. 288 (1938); Standard Oil Co. v. Dunagan, 171 So.2d 622 (Fla. 3d DCA 1965). This measure of damages has been applied to the removal of soil, United States Steel Corp. v. Benefield, 352 So.2d 892 (Fla. 2d DCA 1977), cert. denied, 364 So.2d 881 (Fla. 1978), as well as the severing of trees, National Rating Bureau v. Florida Power Corp., 94 So.2d 809 (Fla. 1956). Where the reduction in market value is an inadequate measure, recovery has been allowed for losses personal to the owner. Fiske v. Moczik, 329 So.2d 35 (Fla. 2d DCA 1976). In Fiske we permitted a recovery of the replacement value of palm trees improperly removed from the owner's residence. Likewise, the court in Elowsky v. Gulf Power Co., 172 So.2d 643 (Fla. 1st DCA 1965), approved damages in excess of the loss of market value when a power company cut down a tree next to the plaintiff's home. In these cases, a judgment for the difference in market value would not have adequately compensated the owners for the intangible losses they suffered from the destruction of trees near their homes.
The Clarks seek to come within the rationale of Fiske and Elowsky by pointing to evidence that they had always intended to build residential duplexes on the property and had already hired an architect and a surveyor for this purpose when Conner's trespass came to light. We do not believe that this is the kind of personal interest in land which would authorize the recovery of replacement value.[3]See Nilsson v. Hiscox, 158 So.2d 799 (Fla. 1st DCA 1964). The Clarks' reliance on Watson v. Jones, 160 Fla. 819, 36 So.2d 788 (1948), is misplaced. In Watson the defendant improperly cut ninety-seven pine trees on property the plaintiff intended to use for a tourist and trailer park. In the course of upholding a $2,500 judgment, the supreme court quoted from a Wisconsin case which had permitted a homeowner to recover the replacement value of lost shade trees. While the Watson opinion mentioned the importance of the severed trees to the plaintiff's intended use of the land, the basis for the $2,500 recovery was the depreciation in market value. Thus, the value of the trees for *677 ornament and shade suitable for a tourist and trailer park bore on market value to the extent that when the trees were cut the value of the land suffered greater depreciation.
The existence of the trees on the Clarks' land no doubt enhanced its value. Thus, the severing of these trees certainly caused a substantial reduction in market value. Yet, despite the trial judge's pretrial announcement concerning the proper measure of damages, the Clarks introduced no evidence whatsoever concerning the value of the land before and after the trespass. Therefore, when Conner moved for a directed verdict, the Clarks had failed to prove damages according to the established rule. Realizing that the Clarks had, in fact, incurred some damages, the court denied Conner's motion to the extent of permitting the jury to consider the cost of removing the debris. Even this element of damages should have been recovered as a part of the loss of market value. However, Conner consented to the entry of a judgment against it for the cost of removing the debris and has not cross-appealed this ruling. The Clarks cannot obtain additional damages because they failed to carry their burden of proof.
Upon review of the record, we also find that the court properly directed a verdict for Conner on the issue of punitive damages. The trespass went on for two years before anyone realized that Conner was actually on the Clarks' property. When Mr. Clark finally obtained a survey and thereby discovered the trespass, he told some of Conner's truck drivers that they were travelling on his property, and he posted a no trespassing sign on the road. Later that day he gave a copy of the survey to a Conner executive who said he would check out the matter. The sign was knocked down, and the drivers continued to use the road for one week. At this point Conner removed its equipment and closed down the road. There was insufficient evidence of malice to raise a jury issue. See Florida Power Corp. v. Scudder, 350 So.2d 106 (Fla. 2d DCA 1977), cert. denied, 362 So.2d 1056 (Fla. 1978), appeal dismissed, 439 U.S. 922, 99 S.Ct. 303, 58 L.Ed.2d 315 (1978).
AFFIRMED.
SCHEB and RYDER, JJ., concur.
NOTES
[1] In declining to allow the Clarks to calculate their damages on a tree-by-tree basis, the judge observed:

THE COURT: I really heard enough, now we need to move on. It's clear to me that  that the approach of the Plaintiff, which is to take  cannot be permitted. The land is admittedly unimproved, at least I believe it is from everything I've been told in this case, simply an unimproved piece of land, non-residential. And the trees simply are growing on it in some haphazard fashion that nature has a way of doing. And that your approach would be so economically preposterous in my opinion to make two acres  two acres of land, I haven't asked you what the value of the land is, but I think anybody would know the approximate range of what that land is worth down there, to turn that into an eighty to one hundred thousand dollar damages in my opinion is just preposterous and simply an effort to overkill, that's not compensation, that's  that such an approach does not even remotely relate to reasonable compensation for unimproved land in this county.
[2] On appeal the Clarks suggest that their landscape architect was giving his opinion of the cost to replace each of the destroyed trees. Leaving aside the feasibility of replacing mature oak trees, we read his testimony as placing a value on each tree as one might do in establishing a freeze damage casualty loss for income tax purposes. In view of our disposition of the case, it makes no difference whose version of the testimony is correct.
[3] Restatement of Torts § 929(a)i comment b (1939), pertaining to harm to land from past invasions, includes a discussion of when an owner has such a personal interest in his land that he ought to be entitled to recover the cost of restoration even when it is disproportionate to the diminution of market value.