639 So.2d 595 (1994)
DAVEY COMPRESSOR COMPANY, Petitioner,
v.
CITY OF DELRAY BEACH, et al., Respondents.
No. 81538.
Supreme Court of Florida.
March 31, 1994.
Rehearings Denied July 15, 1994.
Douglas M. Halsey, Kirk L. Burns and Judith Jackson Chorlog, Douglas M. Halsey, P.A., Miami, for petitioner.
Susan Ruby, City Atty., Delray Beach, Steven R. Berger and Bradley H. Trushin, of Wolpe, Leibowitz, Berger & Brotman, Miami, and Ridgway M. Hall, Jr. and Susan R. Koehn, Crowell & Moring, Washington, DC, for respondent.
Joseph A. Morrissey, Clearwater, amicus curiae for Florida Ass'n of County Attys., Inc.
McDONALD, Justice.
We review Davey Compressor Company v. City of Delray Beach, 613 So.2d 60 (Fla. 4th DCA 1993), which we accepted based on conflict with Standard Oil Co. v. Dunagan, 171 So.2d 622 (Fla. 3d DCA 1965). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. We approve the result reached by the district court.
In 1981, Aero-Dri Corporation, a division of Davey Compressor Company, began manufacturing dehydration filters and overhauling air compressors at their facility in the City of Delray Beach. From 1981 to 1987, Davey purchased between 5,280 and 6,000 gallons of the highly toxic solvent perchloroethylene (hereafter referred to as "perc"). Davey disposed of the waste perc by illegally dumping it onto the ground at the rear of their facility. The perc reached the groundwater in the City's potable water supply wellfield, known as the "20 series" wells, which were located less than a quarter mile from Davey's facility.
The City has a drinking water withdrawal permit from the South Florida Water Management District for the "20 series" wells. When the City discovered the contamination, it reported the problem to the appropriate government agencies and they directed the City to shut down five of the six wells in the system and to procure potable water from other sources on an emergency basis. The *596 City also installed equipment to treat the water to reduce the perc levels to the legally acceptable standard.
The City sued Davey in circuit court on four common law claims: trespass, negligence, private nuisance, and strict liability. Finding Davey liable on all of the claims, the jury awarded the City $3,097,488 for past damages and $5,600,000 for estimated future response costs. The Fourth District Court of Appeal held that past damages could be awarded without regard to the value of the City's property, affirmed the award for past damages and reversed the award for future damages.
Generally, damages for the wrongful injury of property are measured either by the diminution in value or the costs of repairing or restoring the property to its condition prior to the injury, usually referred to as the "restoration" rule.[1]United States Steel Corporation v. Benefield, 352 So.2d 892 (Fla. 2d DCA 1977), cert. denied, 364 So.2d 881 (Fla. 1978). Benefield involved 26 acres of a 750 acre land tract that the defendant damaged by removing phosphate minerals which had been deposited on the land as a by-product of a mining operation. Because the land was originally purchased for $466 per acre, and repair of the 26 acres would cost $13,084 per acre, the court held that the cost of restoration should not be awarded if it was more than the diminution in market value. Id. Thus, the court held that the diminution in value was the appropriate measure of damages.
Unlike Benefield, where the cost of restoration is less than the diminution in value, the law generally requires that damages be measured by the cost of repairs or restoration. Keyes Co. v. Shea, 372 So.2d 493 (Fla. 4th DCA 1979). Keyes qualified the rule on damages, however, by stating that the cost of restoration "cannot be adopted as the measure of damages where the cost of restoring the property would exceed the value thereof in its original condition, or the depreciation in the value thereof, or the actual damage sustained by plaintiff, or where restoration is impracticable." Id. at 496 (quoting 25 C.J.S. Damages § 84, at 924-26). Restricting restoration costs to the value of the property is a means of preventing plaintiffs from being overcompensated or from receiving overlapping recovery. In the instant case, however, where the City's potable water supply has been negligently contaminated, the potential but unlikely threat of overcompensation does not justify limiting the measure of damages to the value of the wellfield.
Davey argues that the State of Florida, as the "owner" of the groundwater, is the proper party to bring suit for natural resource damages.[2] As the supplier of groundwater, however, the City has an established interest in ensuring that the groundwater is safe for the residents who ultimately consume it. Thus, municipalities work in conjunction with state water management districts to fulfill the crucial and indispensable government function of providing a finite resource to all Floridians. See § 403.851(2), Fla. Stat. (1991). As stated in section 403.851, "it is the policy of this state that the citizens of Florida shall be assured of the availability of safe drinking water." Accordingly, the City must be compensated for the restoration of groundwater to a level fit for human consumption, even if the cost of such restoration exceeds the value of the real estate on which the wells are located.
In Dunagan and in Crown Cork & Seal Co. v. Vroom, 480 So.2d 108 (Fla. 2d DCA 1985), the diminution in value was awarded as the measure of damages for the contamination of groundwater. Both of those cases, however, involved damage to the property of private landowners who could be adequately compensated by being paid for the diminution in value before and after the injury to their property. In contrast, the instant case involves contamination of a public entity's water supply. Unlike a private landowner, a municipality responsible for supplying drinkable water to a city of over 50,000 residents is not justly compensated by the diminution in value. In Martin v. Pinellas County, 444 So.2d 439 *597 (Fla. 2d DCA 1983), review denied, 451 So.2d 849 (Fla. 1984), which affirmed an injunction requiring the removal of hazardous materials from land located near a wellfield, the trial judge emphasized that the court was "dealing with the single most necessary substance for the continuation of life, and that substance is water. Any danger to that primary necessity is ecologically and humanly unacceptable." Id. at 441. Recognizing the environmental dangers that are directly associated with the negligent contamination of groundwater, we find that public policy supports restoration costs as the measure of damages in this case. We approve the result reached by the district court and we distinguish Vroom and Dunagan from the case now before us.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
GRIMES, J., concurs with an opinion.
GRIMES, Justice, concurring.
The "restoration" rule is clearly an inadequate measure of damages where a city's water supply is polluted. While there may be circumstances in which it would be unfair to impose the entire cost of restoration upon the polluter when suitable alternatives were less expensive, in this case the city's ability to obtain an equivalent supply of water from another wellfield was both speculative and more costly. Thus, the award of restoration costs was justified.
NOTES
[1] The diminution in value is the difference between the value of real property before and after the injury.
[2] The State of Florida has a lawsuit pending against Davey for natural resource damages and to compel the cleanup of the groundwater.