FULMER, Judge.
David Engelke and Bryan Engelke appeal from a jury verdict and final judgment that awarded Athle-Tech Computer Systems, Inc., about $13 million in damages based on a claim of unjust enrichment. Athle-Tech had alleged that the Engelkes were enriched by proceeds from the sale of software that should have been paid to Athle-Tech. After considering the Engelkes’ several arguments on substantive issues related to their liability, we have concluded that none of the arguments provides a basis for reversal. We do not discuss these issues further. However, we reverse the damages award in the final judgment and remand with directions.
Facts[1]
Plaintiff-Appellee Athle-Tech made video-editing equipment for college and professional sports teams that enabled coaches to manipulate and simultaneously view multiple video clips in order to review their team’s performance in past games. Code-fendant Montage Group Ltd. (“Montage”), not a party to this appeal, also made video-editing equipment, but its market was the film industry. Defendant-Appellant David Engelke originally worked for Montage. In 1993, Athle-Tech and Montage entered into negotiations aimed at a business relationship. At that time, Athle-Tech was making analog equipment, but Montage was producing relatively advanced digital equipment. Apparently, the purpose of the new relationship was to enable Athle-Tech to upgrade its products to digital format for sale to its clients, thus simultaneously expanding Montage’s market into the sports world.
Although Athle-Tech and Montage negotiated and reviewed numerous documents proposed to memorialize their relationship, the only document on which Athle-Tech would subsequently base its claims was a letter agreement (“Agreement”) dated January 1995 for the development of the video-editing software, a necessary component of the digital video-editing system envisioned by Athle-Tech. The lawsuit underlying this appeal ultimately derives from the terms of this Agreement.[2] Under the Agreement, Montage was to develop version 1.0 of a computer software product known as Coaches Graphic User Interface, or Coaches GUI, also referred to as ADACI. Montage would provide Athle-Tech with the Coaches GUI source code. Each party would own a one-half interest in the software once it was completed and each party would pay one-half of the development costs. Proceeds derived from the sale of licenses of the software would be divided equally.
The relationship between Athle-Tech and Montage soon soured. Athle-Tech claimed that Montage failed to timely perform its obligations under the Agreement, *6 including a failure to provide Athle-Tech with the Coaches GUI source code. The Engelkes claimed that Athle-Tech secured only about two customers for the new software, thus frustrating Montage. By about 1998 Montage was developing a software product called Omega. Athle-Tech alleged in its complaint that this was merely Coaches GUI with a different name, while the Engelkes claimed that Montage had split the source code into “two code bases,” one for ongoing development for an Athle-Tech client, one for development for a competitor of Athle-Tech.
In 1997, David Engelke formed Digital Editing Services, Inc. (“DES”), a codefen-dant not involved in this appeal. Defen-danC-Appellant Bryan Engelke became an employee of DES. David Engelke and Bryan Engelke eventually held all of DES’s shares of stock in a 95:5 ratio. In 1999 DES paid Montage $500,000 in exchange for, inter alia, an exclusive license to the Omega system. Athle-Tech alleged that this transaction was undertaken “to avoid any liability to Athle-Tech and [to] conceal the misappropriation of the Coaches GUI source code.” DES successfully sold Omega systems to numerous professional and college teams; Athle-Tech claimed that gross sales amounted to $15 million. Neither Montage nor DES ever paid Athle-Tech any portion of these proceeds.
In early 2000, codefendant Pinnacle Systems Inc. (“Pinnacle”), not a party to this appeal, acquired all of DES’s shares from the Engelkes for $9.4 million in cash and Pinnacle stock, plus an “earnout” — i.e., a dollar figure subsequently payable to the Engelkes that was to be derived by applying a mathematical formula to DES’s sales during the year following the acquisition. After this earnout period had passed, a dispute between Pinnacle and the En-gelkes arose over the earnout amount, which was resolved through arbitration. It is this earnout that is at issue in the lawsuit underlying this appeal.[3]
In August 2000, Athle-Tech sued Montage and DES in an action separate from the lawsuit at issue here, alleging, inter alia, unjust enrichment by DES based on DES’s earnings from the Omega product. As a sanction against the defendants for discovery violations, the trial court found liability and ordered that the jury trial proceed on the issue of damages only. The jury awarded $4.74 million against Montage and DES, and $8.9 million against DES. Montage Group, Ltd. v. Athle-Tech Computer Sys., Inc., 889 So.2d 180, 189 (Fla. 2d DCA 2004). This court reversed most of the first figure, and ordered remittitur to reduce the second figure by half based on the equal-ownership provision of the Agreement. Id. at 200.
However, the first lawsuit did not resolve what Athle-Tech’s proceeds under the Pinnaele-Engelke earnout agreement should be, because the figure under that agreement had not yet been settled. Once that detail was resolved, Athle-Tech filed the present lawsuit, in March 2004, alleging: (I) unjust enrichment against the En-gelkes based on their proceeds from the Pinnaele-Engelke earnout agreement, (II) unjust enrichment against DES, (III) breach of contract against Montage, and (IV) tortious interference against DES and Pinnacle. The corporate codefendants— Pinnacle, Montage, and DES — settled with *7 Athle-Tech.[4]
The Engelkes did not settle, but instead proceeded to trial. The jury was asked on the verdict form to answer four questions with respect to each of the two defendants. The questions presented the jury with two alternative measures of damages. The jury was to determine, first, whether each of the Engelkes was unjustly enriched; second, if so, by how much, assuming that Athle-Tech was entitled to a one-hundred-percent interest under the Agreement; third, again by how much, assuming that Athle-Tech was entitled to a fifty-percent interest under the Agreement; and finally, which of the alternatives presented by questions two and three should be the measure of damages. The jury found in favor of Athle-Tech, determining that Athle-Tech was entitled to a one-hundred-percent interest and that, based on this interest, David Engelke was unjustly enriched by $12,308,973.34 and Bryan En-gelke by $647,840.70.
The court confirmed these awards in its final judgment, also awarding costs and postverdict prejudgment interest against the Engelkes. The Engelkes appeal.

Damages

The Engelkes raise several challenges to the damages awarded to Athle-Tech, two of which we conclude have merit. The Engelkes first argue that the amount of the earnout due to Athle-Tech, if any, should be limited to that portion of the earnout attributable to the sale of Omega software licenses alone, which amounted to $684,768 for a total of 168 licenses, according to testimony presented by a CPA who testified as an expert for the Engelkes. In support of their argument, the Engelkes point out that the Agreement provides as follows, in pertinent part: “6. Montage and Athle-Tech agree that the proceeds of all sales of licenses of the Coaches GUI software will be divided equally between the parties.” It would appear from the parties’ briefs and the record that there are several significant categories of products that have been sold by, and rights thereto transferred between, the several defendants: Coaches GUI software and Omega software; software derived from Omega software; systems (including hardware) that run on Omega software or Omega-derived software; and non-Omega-related software and systems.
Although the Engelkes’ argument seems plausible at first glance, we note that the next paragraph of the Agreement reads as follows:
7. Montage and Athle-Tech agree that any derivative products created from the Coaches GUI by either party will also be equally owned by the parties. The sale price of any derivative software product will be agreed to in writing by the parties, prior to the sale [of] any product. For the purpose of this agreement, a derivative software product shall be defined as: any product created by either party using any part or parts of the original Version 1.0 Source Code or future release versions of the Coachefs] GUI created by Montage or Athle-Tech.
As far as we can determine from our review of the record, neither party discusses paragraph 7 of the Agreement.[5] Similarly, on appeal neither party mentions this provision. However, a copy of the Agreement was entered into evidence and was thus *8 available to the jury. Because the jury had evidence from which it could conclude that Athle-Tech may be owed something more than revenues from Omega software licenses alone, we cannot reverse on the basis of this component of Engelkes’ first argument.
In the alternative, the Engelkes argue that even if the revenues attributable to entire systems using Omega software, and not the software alone, are to be included in the calculation of the award due to Athle-Tech, revenues attributable to non-Omega systems should not be. The primary source of non-Omega-related revenues was sales by Pinnacle of products and services originally developed by Avid, Inc. Avid had been a competitor to DES, but Pinnacle acquired Avid shortly after purchasing DES. As a result of Pinnacle’s acquisition of Avid, the Engelkes and Pinnacle renegotiated the terms of their earn-out agreement to include revenues from the Avid product line in the calculation of the earnout. At trial, Athle-Tech presented evidence to support its argument that, based on the terms of the amended earn-out calculation, the entire earnout amount, even with the inclusion of Avid revenues in the calculation, constituted unjust enrichment from the Engelkes’ sale of the ADA-CI-Omega software and source code to Pinnacle.[6] The Engelkes presented evidence to support their argument that the jury should deduct and exclude all of the Avid sales from the earnout calculation. The jury awarded Athle-Tech a total of $12,956,814.04, equivalent to 62.38 percent of the amount sought by Athle-Tech. This award contains an implicit finding that revenues from Avid products were included in the revised earnout calculation as part of the deferred compensation payable to the Engelkes for their sale of the ADACI-Omega software and source code to Pinnacle. There was evidence presented to support such a finding.
However, the evidence does not support the jury’s determination that Athle-Tech is entitled to one hundred percent of $12,956,814.04. We agree with the Engelkes that, based on the language of the original Montage/Athle-Tech Agreement giving the parties equal shares in the proceeds derived from Coaches GUI, Athle-Tech’s recovery should be limited to fifty percent of the earnout attributable to Omega software or Omega systems, not the jury’s determination of one hundred percent. Athle-Tech counters this argument with a discussion of the modern approach to unjust enrichment and restitution, urging that the jury duly found that the Engelkes should not “keep the profits of their wrongful taking” in rendering its verdict for damages.
We conclude that the Engelkes’ position is analogous to that of DES in the first lawsuit, see Montage, 889 So.2d 180, at least with respect to the unjust enrichment claim against DES in that action. There, we noted that the “fractional nature of Athle-Tech’s interest in the source code for the Omega software” meant that the trial court should have ordered a remitti-tur, reducing the unjust enrichment award against DES by half. Id. at 196-97. We found support for this conclusion “in the principle that the purpose of restitution- *9 based claims, such as unjust enrichment, is not punitive,” id. at 197, and quoted from the Restatement of Restitution:
Actions for restitution have for their primary purpose taking from the defendant and restoring to the plaintiff something to which the plaintiff is entitled, or if this is not done, causing the defendant to pay the plaintiff an amount which will restore the plaintiff to the position in which he was before the defendant received the benefit. If the value of what was received and what was lost were always equal, there would be no substantial problem as to the amount of recovery, since actions of restitution are not punitive.
Restatement of Restitution, introductory note to ch. 8, Topic 2, at 595-96 (1937).
Consistent with our determination regarding the amount of restitution that DES should have been ordered to pay in the first lawsuit, Montage, 889 So.2d at 197, we conclude that if the Engelkes were required to pay Athle-Tech restitution beyond Athle-Tech’s fractional interest in whatever Omega-related products the Agreement gives Athle-Tech an interest, the result would be punitive and an “unwarranted windfall profit to Athle-Tech,” id. It follows that the trial court should have allowed the trial to proceed on the basis that the most Athle-Tech could be awarded was a fifty-percent interest of the appropriate measure of proceeds from the earnout payment.
Finally, the Engelkes argue that the jury award represents prohibited double recovery with respect to both Athle-Tech’s recovery from the first lawsuit and its settlement with the other defendants in the present lawsuit. We conclude that one of the Engelkes’ arguments regarding double recovery has merit.
In Count I of its Amended Complaint, Athle-Tech sued the Engelkes under an unjust enrichment theory, claiming that “[i]t would be inequitable for the Engelkes to retain the benefits of the payments received under the Earnout Agreement” ■with Pinnacle and that “[ejquity requires the Engelkes to disgorge their earnout payments to Athle-Tech.” In Count II, Athle-Tech sued DES under ah unjust enrichment theory, alleging that “[t]he value of the ADACI [i.e., Coaches GUI] source code — DES’s unjust enrichment— includes the payments made by Pinnacle to the Engelkes under the Earnout Agreement” and that “[i]t would be inequitable for DES to retain these benefits without paying the fair value thereof to Athle-Tech.”
The three corporate defendants — Pinnacle, DES, and Montage — settled the present lawsuit with Athle-Tech for $3 million. To the extent that this figure represents DES’s settlement of Count II, unjust enrichment in the form of “payments made by Pinnacle to the En-gelkes under the Earnout Agreement,” Athle-Tech would enjoy a double recovery with respect to the Engelkes’ disgorgement to Athle-Tech of the Omega-related component of the earnout payment. However, Athle-Tech is entitled to only one such award. As we noted in Montage, “[a] double recovery based on the same element of damages is prohibited.” Id. at 199 (citing Atl. Coast Line R.R. Co. v. Saffold, 130 Fla. 598, 178 So. 288, 290 (1938); Besett v. Basnett, 437 So.2d 172, 173 (Fla. 2d DCA 1983)).
In conclusion, we reverse the award of damages against David Engelke and Bryan Engelke and remand for further proceedings. Because Athle-Tech is entitled only to its fifty-percent interest pursuant to the original Agreement with Montage, the trial court is directed to reduce the jury’s award by fifty percent. Fur *10 ther, because Athle-Tech is not entitled to earnout-related damages already recovered under the settlement with the corporate defendants, the judgment shall be further reduced by any such amounts that the Engelkes can prove.
Affirmed in part, reversed in part, and remanded for further proceedings.
DAVIS and SALCINES, JJ., Concur.

. A more extensive recitation of the underlying facts is found in Montage Group, Ltd. v. Athle-Tech Computer Systems, Inc., 889 So.2d 180 (Fla. 2d DCA 2004).

. Athle-Tech asserted in its complaint that the Agreement was a valid contract. The En-gelkes answered that it was not. However, the Engelkes do not contest the validity of the Agreement on appeal.

. The Engelkes adduced evidence that the earnout figure amounted to $15.3 million. Athle-Tech introduced evidence that the figure was $17.6 million. The difference between these figures is due primarily to interest that accrued between the payment due date and the actual date of payment from Pinnacle to the Engelkes.

. The parties simultaneously settled the remanded first lawsuit as well.

. During closing argument, the Engelkes urged the jury to award, at most, a figure corresponding to the sale of 168 licenses (reduced by fifty percent, in accordance with the Engelkes' next argument).

. Pinnacle's acquisition of Avid, whose products had been competing directly with Omega, gave rise to the possibility that Pinnacle’s Omega-related sales would be harmed by internal competition. Therefore, according to testimony presented at trial, the Engelkes and Pinnacle renegotiated the earnout agreement so that the formula would incorporate Avid revenues but still produce a final earnout figure comparable to what the parties believed the figure would have been if Pinnacle had not acquired Avid and continued to sell Omega-related products alone.