476 So.2d 735 (1985)
Bernard WINDHAM, et al. Appellant,
v.
FLORIDA DEPARTMENT OF TRANSPORTATION, Appellee.
No. AX-30.
District Court of Appeal of Florida, First District.
September 27, 1985.
*736 Randall E. Denker of Lehrman & Denker, Tallahassee, for appellant.
Linda G. Miklowitz and A.J. Spalla, Tallahassee, for appellee.
SMITH, Judge.
The Windhams appeal from an order of the circuit court dismissing with prejudice their second amended complaint for personal injuries and other damages. In their complaint, the Windhams attempted to state a cause of action based upon the negligence of the Department of Transportation, or its contractor (not a party to this appeal), or both, in improperly disposing of a toxic substance which ultimately contaminated the water well located on the Windhams' property and from which they derived their drinking water over a period of years prior to the filing of the complaint. The trial court dismissed the complaint upon the ground that although the injuries and damages suffered by the Windhams occurred subsequent to the passage of the statute waiving sovereign immunity, Section 768.28, Florida Statutes (effective July 1, 1974), the act or acts of the Department forming the basis for the plaintiffs' claims of liability occurred prior to the passage of the waiver statute, so that the action was barred by sovereign immunity. The dismissal was further predicated upon a finding that the acts complained of were those of the codefendant, W.T. Ledbetter Company, an independent contractor for whose acts the Department had no liability. We view the complaint essentially as did the trial judge, as failing to allege acts occurring subsequent to the waiver of sovereign immunity upon which a cause of action may be based, and therefore affirm.[1]
According to their complaint, in 1976 appellants, Bernard and Patricia Windham, bought property in rural Leon County and drilled a well to provide water.[2] They began to suffer from a variety of symptoms for which medical treatment was sought. The Windhams' first child was born with a rare form of eye cancer, requiring surgical removal of the eye. During February and March 1982, the Department of Environmental Regulation sampled water from the Windhams' well and discovered that it was contaminated with trichloroethylene (TCE). TCE is alleged to be an odorless, colorless, and tasteless chemical which is highly carcinogenic and is classified by EPA as a "hazardous toxic waste."
At the time of discovery of the TCE contamination, according to the Windhams' complaint, they had been exposed to TCE for six years. Further, they allege, TCE is known to cause sperm abnormalities and birth defects, in addition to brain damage, damage to bone marrow, and reductions in blood cell production. Subsequent to learning of the TCE contamination, the Windhams allege that their search for the source of the TCE led to the finding of drums of the solvent buried in a pit alongside *737 the road (on another person's private property, appellant's brief states) near the Windhams' property. They allege that the drums were unlawfully buried there by the Department's contractor, Ledbetter, in 1959, during the process of paving a section of the highway near what is now the Windham property. It is alleged that Ledbetter used TCE solvents to clean road equipment, and improperly buried drums of the contaminant in the pit with no attempt to safeguard the escape of the chemicals or to remove them from the construction site.
The complaint is in three counts, sounding in negligence, trespass, and nuisance. Count I, negligence, charges that the Department knew or should have known of the use of TCE, an inherently dangerous substance, and that the Department had a non-delegable duty to supervise the work being carried on by its contractor to insure that the hazardous substance would not be used or disposed of in such manner as to cause injury or serious risk of harm to plaintiffs or other members of the public. They allege that the Department was negligent in its failure to impose safety precautions and its failure to supervise its contractor's use of the dangerous substance, in permitting its contractor to clean equipment with TCE daily in such a manner that TCE drained unrestricted and untreated into the soil, and in permitting the contractor to bury and abandon toxic wastes in a pit when the contract was completed. They further allege knowledge on the part of the Department that TCE is not biodegradable, and that the soil where the TCE was used and disposed of was porous, and that it was foreseeable that the TCE spilled onto and buried untreated into the ground would percolate through the soil and contaminate the ground water.
Count II, trespass, contains the further allegations that the Department had a duty to prevent the flow of TCE into their ground water, that the Department knew or should have known that its negligence would result in the hazardous wastes trespassing onto the plaintiff's land or into the ground waters beneath their land, and that such hazardous wastes did in fact trespass onto their land, and into their ground water, causing loss of value of the land.
Count III, nuisance, alleges a similar duty to insure that the Department's contractor would not be permitted to create and maintain a condition that would interfere with the plaintiff's enjoyment of their land, and to require the contractor, Ledbetter, to use and dispose of the inherently dangerous substance, TCE, in a manner that would prevent it from percolating through the soil and contaminating the ground water below the surface of their land. This count further alleges knowledge on the part of the Department as to the nature of TCE, and foreseeability of the consequences of the substance being spilled onto the ground, buried and abandoned in such manner that it would percolate through the soil and contaminate the ground water. Accordingly; they allege, the Department, had created and maintained a nuisance causing injury to the plaintiffs.
The plaintiffs contend that the trial court erroneously interpreted Section 768.30, Florida Statutes (1981), and miscontrued State ex rel Division of Administration v. Oliff, 350 So.2d 484 (Fla. 1st DCA 1977), in determining that their cause of action arose in 1959 when the roadwork which allegedly precipitated the contamination of plaintiffs' water supply took place.[3] They argue that Oliff's actual holding was that a motion to dismiss in circumstances analogous to the case at bar was improper because the question of when a cause of action arose was a factual one for a jury to decide. Plaintiffs argue strenuously that their cause of action against the Department could not have arisen in 1959 since, they maintain, they could not possibly have *738 been affected by the contamination of their water until 1976, the year they purchased the property. Plaintiffs contend that the trial court's ruling effectively deprives them of access to the courts by barring their lawsuit before they had an opportunity to discover their injury, citing Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981), and Vilardebo v. Keene Corp., 431 So.2d 620 (Fla. 3d DCA 1983).
The Department, on the other hand, asserts that the plaintiffs' implicit statute of limitations argument is irrelevant because the existence of sovereign immunity for an act or omission by a state agency is an absolute bar to recovery; hence, the statute of limitations on such a claim would not begin to run at all. The Department notes that Oliff's holding applied only to a cause of action based on fraud, and the department further points to the court's recognition of the rule that where negligence is involved a plaintiff's cause of action would accrue at the time of injury, even if the full extent of the injury was not discovered until later, Oliff, supra, at 486, n. 1. Here, the Department argues, the plaintiffs were injured, if at all, no later than 1959, at a time when sovereign immunity remained in force. Although we cannot accept the Department's argument that plaintiffs were "injured" in 1959, neither do we find the Oliff decision dispositive under the facts presented here,[4] and we agree that dismissal of the complaint was proper.[5]
As we view plaintiffs' arguments, they attempt (incorrectly, we think) to use the "discovery" rule, tolling the statute of limitations for certain tort actions, to determine whether an "incident" occurred subsequent to the effective date of Section 768.28, Florida Statutes (1981), upon which they may base a cause of action against the Department. A statute of limitations is indeed "tolled" where there is nothing to put the plaintiff on notice of any probable or even possible injury. City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954). The question in this case, however, is not whether a cause of action is being timely pursued, but whether a cause of action exists at all under the particular statutory waiver of sovereign immunity applicable here. See, Comley v. Emanuel Lutheran Charity Board, 35 Or. App. 465, 582 P.2d 443, 448, n. 5 (1978). Hence, since the dismissal was not based on a statute of limitations defense, we are not here concerned with when the plaintiffs would have been able to discover the extent and source of their injuries. It is uncontroverted that no injury to them could have occurred until after they bought the property, which occurred after the effective date of the statute. Rather, we are concerned with whether plaintiffs have alleged that the acts or omissions which resulted in their injuries  that is, the "incident" upon which their claims are ultimately based  occurred subsequent to the effective date of Section 768.28. If not, their action is barred by the doctrine of sovereign immunity which was the law of Florida until July 1, 1974.
Since the waiver statute (see footnote 3, supra) allows an action against the department only for "incidents occurring on or after" the statute's effective date, we initially focus upon the meaning of the *739 term "incident" as used in the statute. Although the word is capable of conveying numerous meanings, we are of the opinion that in the context in which it is used, the most appropriate meaning would be "an occurrence of an action or situation felt as a separate unit of experience ...," Webster's Third New International Dictionary, Unabridged, Principal Copyright 1961. More precisely, since the term is also synonymous with "occurrence," the term "incident" is simply a happening, or event. Id., under "occurrence." The crucial question is whether the actual injury complained of is to be regarded under the statute as the "incident," or whether the "incident" is the wrongful act or event causing the injury.
We further note, for guidance, the basic principle that in Florida, "sovereign immunity is the rule, rather than the exception," Pan-Am Tobacco Corporation, d/b/a Pan-Am Vend-Tronics v. Department of Corrections, 471 So.2d 4 (Fla. 1984), and the further admonition that a waiver of sovereign immunity should be strictly construed in favor of the state, and against the claimant. Tampa-Hillsborough County Expressway Authority v. K.E. Morris Alignment Service, 444 So.2d 926, 928 (Fla. 1983). Applying these aids to interpretation, we are of the opinion that while the statute obviously affords a remedy for negligent acts or omissions occurring subsequent to its effective date, negligent acts or omissions such as those alleged here, occurring prior to the statute's effective date, may not be utilized as the basis for a cause of action for injuries materializing after the effective date. To consider the term "incident" as synonymous with "accrual of the cause of action," as urged by appellants, would be inconsistent with other provisions of the same statute which place limitations on the maintenance of a cause of action based upon the time when "such claim accrues." Section 768.28(6)(a), (11), Florida Statutes (1981). It is reasonable to assume that had the legislature intended the construction urged by appellants it would have used "causes of action accruing," instead of "incidents occurring," in Section 768.30. Cf., Collier v. Dade County, 417 So.2d 695 (Fla. 3d DCA 1982), in which the court reached the same result where the negligence of a county-owned hospital occurred before waiver of sovereign immunity as to the hospital, but the negligence (hemostat left in patient's body) was not discovered until after waiver of sovereign immunity.
For the purpose of determining when the negligent incident forming the basis for the cause of action here occurred, we turn to the elements of the cause of action sought to be alleged. As we view it, recovery by the plaintiffs is dependent upon proof of facts demonstrating that the negligence of the department (failure to supervise the proper disposal of a dangerous chemical), contributed to the happening of an event (escape of the chemicals from the immediate area of dumping or burial), which made possible the creation of a dangerous condition (seepage of the chemical into the underground water beneath the burial site), which thereafter by forces of nature became transported to the underground water beneath plaintiffs' land, which in turn resulted in injury to the plaintiffs when they drove a well into the ground, extracted and then consumed the water. It is thus apparent that the initial link in the causative chain (the department's failure to supervise) is far removed from the occurrence of an injury to the plaintiffs by time and distance, and by other intervening circumstances and conditions over which the department had no control. We do not suggest that this combination of circumstances would necessarily insulate a non-immune tort-feasor from responsibility for its negligence. See, 57 Am.Jur.2d, Negligence, § 143, "Time, distance, contiguity." However, we find it useful to consider the sequence of events in the causative chain in determining whether the injury of which plaintiffs complain can reasonably be regarded as the product of a post-statute "incident" of negligent conduct by the department.
It is not alleged that the department owned the TCE or the land from which it *740 came,[6] nor that any post-statute negligence of the department caused the TCE to be present in plaintiffs' underground water supply.[7] In the final analysis, plaintiffs' complaint on its face reveals only one link in the causative chain  the presence of a dangerous chemical, TCE, in their drinking water  that reasonably can be considered a post-statute "incident." Mere proof of the presence of TCE in the water, however, would not alone suffice to impose liability upon the department. Instead, under the allegations of plaintiffs' complaint, liability on the part of the department must necessarily be predicated upon negligent acts or omissions occurring at the time the chemical was improperly disposed of, in 1959, long prior to the statute waiving sovereign immunity.[8] We hold, therefore, that any claim of liability based upon the department's breach of a duty it might have had to insure the safe disposal of the TCE by its contractor in 1959 is barred by the doctrine of sovereign immunity. See, Collier v. Dade County, supra. To construe the statute as allowing recovery based upon pre-amendment negligence would, we believe, give the statute retroactive effect, a result which runs contrary to established law. 49 Fla.Jur.2d, Statutes, § 107.
Finally, we reject the plaintiffs' alternative contention that the Department is liable for the creation and failure to warn of a known dangerous condition. While it is clear that such a duty exists, and that its breach can subject the offending governmental entity to tort liability, City of St. Petersburg v. Collom, 419 So.2d 1082, 1083 (Fla. 1982); Cutler v. The Board of Regents of the State of Florida, supra, plaintiffs make no allegations that the Department here created the condition, or had actual knowledge that a known dangerous condition in the form of TCE contamination of area water supplies existed. Absent an allegation that the Department created and failed to warn plaintiffs of the known dangerous condition, plaintiffs' complaint fails to state a cause of action based on this theory. Collom, supra (liability may be imposed when a governmental entity "creates a known dangerous condition" not readily apparent to persons who could be injured by the condition and fails to warn of such condition); Garza v. Hendry County, 457 So.2d 602 (Fla. 2d DCA 1984) (no liability where defendant failed to post warning signs at intersection where no evidence defendant created known dangerous condition); Hannewacker v. City of Jacksonville Beach, 402 So.2d 1294 (Fla. 1st *741 DCA 1981), modified and affirmed in relevant part, 419 So.2d 308 (Fla. 1982) (plaintiff failed to establish notice on defendant's part of known dangerous condition, no jury question on issue).
Recent decisions illustrate the necessity for pleading a specific factual basis for liability where it is sought to overcome a sovereign immunity defense. See, Cutler v. Board of Regents of the State of Florida, 459 So.2d 413 (Fla. 1st DCA 1984); Infande v. Seligman of Florida, Inc., 380 So.2d 1169 (Fla. 4th DCA 1980); Banta v. Rosier, 399 So.2d 444 (Fla. 5th DCA 1981). Appellants' complaint here, stripped of conclusory allegations such as the claim that the Department "created" a nuisance, clearly reveals that the operative facts upon which liability or non-liability must be determined are those relating to the Department's alleged failure to supervise its contractor's use and disposal of TCE, and to monitor the disposal site (which admittedly was located on the property of a third person) for a period of many years afterward. These factual allegations  however pertinent they might be in determining negligence on the part of a non-immune tort-feasor[9]  do not support a finding or conclusion that the Department "created a known dangerous condition" in the sense of City of St. Petersburg v. Collom, supra (city could be liable for construction of storm sewer drainage ditch without providing bars, screen, or other protective device over opening of sewer pipe). The paving contract in question provides only that the Department "shall have at all times full opportunity to inspect the materials to be furnished and the work to be done under the agreement." Neither the use nor disposal of TCE are provided for in the contract, nor does the complaint allege (nor could it) that the TCE was a part of the "materials to be furnished or the work to be done under the agreement."[10]
In sum, appellants' claim of liability is not predicated upon the Department's construction or maintenance of an injury-producing improvement. The basis for the action must be found in the contractor's negligent use of the chemical for purposes incidental to the performance of the paving contract (cleaning the contractor's paving equipment), and improper disposal of any excess chemical, and the Department's failure to supervise this incidental use and disposal, and the Department's failure thereafter to monitor the disposal site. Any negligence by the Department in the supervision of Ledbetter's use of TCE, selection of the storage site, and the manner of burial or disposal of the chemical, occurred in 1959. Assuming, without deciding, that these acts or omissions otherwise would be sufficient to impose liability, the *742 Department could incur no liability at the time they occurred because the rule of sovereign immunity prevailed. The Department's failure to monitor the disposal site, on the other hand, particularly after a period of more than seventeen years from date of the improper use and disposal of the chemical, implicates the Department's judgmental or planning-level decision making, rather than its operational activities. Cf. Trianon Park Condominiums Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985) (city not liable for defaults and omissions in the exercise of police power functions  negligent inspection of construction of condominiums); Carter v. City of Stuart (see footnote 7, supra). Accordingly, the waiver of sovereign immunity which became the law in 1974 would not serve to render the Department liable for its failure to detect and take steps to protect appellants from this unknown danger.
Accordingly, the order appealed from is AFFIRMED.
MILLS, J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissenting.
I am in strong disagreement with the majority's interpretation of the word "incidents", found in Section 768.30, Florida Statutes (1973), limiting the applicability of section 768.28 to incidents occurring only after July 1, 1974 or January 1, 1975, as to certain agencies of the state. The interpretation bifurcates the traditional definition of negligence, requiring the coalescence of three elements necessary to give rise to a cause of action in negligence: (1) a duty by the defendant to protect the person injured from the injury of which he complains, (2) the defendant's breach of the duty, and (3) injury to the plaintiff proximately caused by the breach. Fla.Jur.2d, Negligence § 8 (1982). Although the injury at bar clearly occurred after the passage of Florida's Tort Claims Act, the majority states that the duty and breach thereof (i.e., the department's failure to supervise its contractor in the proper disposal of a dangerous chemical) can be separated from the actual injury sustained by plaintiff's minor child. This construction, I maintain, is at variance with common principles of tort law as well as the Florida Supreme Court's interpretation of the act itself.
It is axiomatic that no cause of action can exist for negligence, even assuming the existence of the negligent act, where no damage can be proven. McIntyre v. McCloud, 334 So.2d 171 (Fla. 3d DCA 1976). It is also the general rule that a cause of action accrues from the time the injury is first inflicted. Seaboard Air Line R.R. Co. v. Ford, 92 So.2d 160 (Fla. 1957), subject, however, to the exceptions that the action will not accrue until there is notice or knowledge of the invasion of a legal right, Miami v. Brooks, 70 So.2d 306 (Fla. 1954), or unless the wrongful act is shown to be continuing or repeated. Seaboard Air Line R.R. Co. v. Holt, 92 So.2d 169 (Fla. 1957).
In my judgment the words used in section 768.30 cannot be isolated from those used in section 768.28. Throughout that statute, the words "cause of action accrued", "claim", or "action" are used repeatedly in numerous contexts. See sections 768.28(1), (5), (6)(a), (b), (7), (9)(a), (11), (12), (13), and (14). The strict construction placed upon section 768.30 by the majority is, moreover, at variance with the provisions of 768.28(5), subjecting the state to liability "in the same manner and the same extent as a private individual under like circumstances ..."; a provision, which, as acknowledged by the supreme court in Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010, 1022 (Fla. 1979), "evinces the intent of our legislature to waive sovereign immunity on a broad basis...."
While not specifically addressing a situation in which the negligent act of the defendant occurred before the enactment of the waiver statute and the injury occurred thereafter, the Florida Supreme Court, in Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, 339 So.2d 1113 (Fla. 1976), strongly intimated *743 that it is the injury suffered  not the negligent act  which controls the applicability of Florida's statutory waiver of sovereign immunity. The facts recited therein reveal that a sixteen-year-old girl was fatally attacked by an alligator while swimming in a state-owned park on August 16, 1973, before the passage of the statute. The court, in holding the statute inapplicable, made the following significant observations:
It is true that the plaintiffs in this case are denied the benefits of this statute solely because of the timing of the incident by which their daughter was killed... . Absent legislation waiving the state's sovereign immunity on August 16, 1973, this court cannot authorize relief through the judicial process.
339 So.2d 1116-1117 (e.s.).
Thus, as the above comments by the court make clear, the incident which triggers the provisions of the statute is the accrual of the claim  the injury  not the breach of a duty owed to plaintiff which arguably may have occurred when the park was constructed and no protective devices or warnings were then posted warning the public of the latent danger.
Perez v. Department of Transportation, 435 So.2d 830 (Fla. 1983), should also be considered, wherein the supreme court permitted the plaintiffs to amend their complaint in order to state a cause of action consistent with the rule announced by it in City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), recognizing that a governmental entity may be negligent in failing to warn the public of a known, latent dangerous condition which the entity had created. As appears from the earlier opinion in the same case by the First District Court of Appeal, 414 So.2d 544, 549 (Fla. 1st DCA 1982), the causeway was constructed in 1957  long before the passage of the waiver act. Through the years  and neither opinion discloses when this first occurred  the bridge's surface had become "travel polished", thereby creating a latent danger to passing motorists. It mattered not to the supreme court in Perez when the bridge was constructed, assuming any negligence then occurred, nor was there any question addressed as to whether the hazardous condition may have existed before the act's passage. What apparently concerned the court was that at the time of the injury, there were no posted signs warning the public of a known latent danger of which the public entity was responsible.
Although the Federal Tort Claims Act does not, as does section 768.30, provide a remedy in tort for "incidents" occurring after a certain date, but instead uses the word "claims", 28 U.S.C. § 1346 (b), I consider that the interpretation placed upon the act by the federal courts is highly persuasive authority for the view that the word incidents, as used in section 768.30, is synonymous with the term accrued claims. In Carnes v. United States, 186 F.2d 648 (10th Cir.1951), the Tenth Circuit Court of Appeals rejected the government's argument that because the negligent act of the government's agents occurred before the act's enactment, although the injury occurred thereafter, the plaintiff was precluded from maintaining the action. The court stated:
Actionable negligence consists of the violation of a duty to another with resulting injury to him. This is elementary and needs no citation of authorities to support it. The correct rule is well stated in Schmidt v. Merchants Despatch Transportation Company, 200 N.Y. 287, 200 N.E. 824, 827, 104 A.L.R. 450, where the court said: "We have said that `in actions of negligence damage is of the very gist and essence of the plaintiff's cause.' * * * Though negligence may endanger the person or property of another, no actionable wrong is committed if the danger is averted. It is only the injury to person or property arising from negligence which constitutes an invasion of a personal right, protected by law, and, therefore, an actionable wrong.
186 F.2d at 650 (e.s.). Accord Re Silver Bridge Disaster Litigation, 381 F. Supp. 931 (D.C.W.Va. 1974).
*744 Finally, and perhaps most importantly, I consider that the majority's analysis, temporally separating the negligent act from the injury sustained, to be seriously flawed. In my judgment, the second amended complaint is susceptible of an understanding, or at the very minimum, to a further amendment, that the department's negligence did not terminate in 1959 when it negligently supervised its contractor's disposal of hazardous substances, but that its negligence continued until the time that plaintiffs discovered the injury in 1982. In addition to negligent supervision by the department, plaintiffs alleged that "it was foreseeable that [because of] DOT's failure to supervise the use and disposal of TCE, and permitting TCE to be regularly spilled unrestricted and untreated on the ground, ... that TCE would percolate through the soil and contaminate the groundwater." Under their count sounding in trespass, plaintiffs alleged that "DOT had a duty to insure that hazardous wastes ... did not flow, ... or otherwise trespass onto plaintiffs' land and/or the groundwaters beneath plaintiffs' land."
The above allegations, although not stating so specifically, import the understanding that DOT was under a continuing duty to warn of a hazardous condition which it had created and was aware of, and of which others, such as plaintiffs in the immediate vicinity, were unaware. By analogy, this continuing, single wrong can be compared to exposure cases, in which the negligence is said to continue from the time of the last exposure of the disease, or as of the time of the employee's termination from employment. See Seaboard Air Line Railroad Co. v. Holt; Copeland v. Armstrong Cork Co., 447 So.2d 922 (Fla. 3d DCA 1984), approved in part, sub. nom., Celotex Corporation v. Copeland, 471 So.2d 533 (Fla. 1985).
Admittedly, the plaintiffs' exposure to the hazardous substance in the case at bar did not occur until after the passage of the act. Such fact, however, does not militate against a conclusion that the department's negligent tort was continuous. City of St. Petersburg v. Collom is clear-cut authority for the position that the department's duty, under the circumstances as alleged, is continuing:
We hold that when a governmental entity creates a known dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger. The failure to fulfill this operational-level duty is, therefore, a basis for an action against the governmental entity.
419 So.2d at 1083 (e.s.).
The governmental entity's duty is either to "take steps to avert the danger or properly warn persons who may be injured by that danger." Id. at 1086. We may fairly assume from the facts alleged that the department took neither course of action. I therefore maintain that the above allegations suggest that the negligent act continued until the discovery of the injury in 1982.
In saying the above, I realize that the plaintiffs have not alleged with particularity facts that would bring them within the ambit of the Collom rule. I realize that they have also twice amended their complaint. I nevertheless consider that they should be given yet another opportunity to do so. In that the courts have been so inconsistent in their application of the discretionary-operational level test to given factual situations,[1] I think we should be flexible in permitting plaintiffs the right to amend their complaint in order to bring themselves within the waiver statute's provisions. I would, therefore, as was done in Perez v. Department of Transportation, remand the case to the trial court with directions that plaintiffs be allowed to amend their complaint for the purpose of *745 stating facts that are consistent with the Collom test.
NOTES
[1] In light of our disposition of this appeal on the grounds stated, we will be required only peripherally to consider the trial court's ruling concerning the Department's liability for the acts of the private contractor, W.T. Ledbetter Company. Cf. Coudry v. City of Titusville, 438 So.2d 197 (Fla. 5th DCA 1983); Skow v. Department of Transportation, 468 So.2d 422 (Fla. 1st DCA 1985). See also, footnote 9, infra.
[2] Since this action comes to us on a motion to dismiss for failure to state a cause of action, we take the factual allegations found in the complaint as true, and assume all reasonable inferences in favor of the plaintiffs, Cutler v. Board of Regents of the State of Florida, 459 So.2d 413, 414 (Fla. 1st DCA 1984).
[3] Section 768.30 (enacted as s. 1, Chapter 73-313, Laws of Florida (1973)) provides:

Effectiveness.  Section 768.28 shall take effect on July 1, 1974, for the executive departments of the state and on January 1, 1975, for all other agencies and subdivisions of the state, and shall apply only to incidents occurring on or after those dates.
[4] In Oliff, the plaintiff based her action in part upon a complaint of fraud in connection with the Department of Transportation's making of a contract for construction of a drainage easement on her property. As noted in this court's opinion (350 So.2d at 486), she alleged that the construction of the easement was not completed until more than six months after sovereign immunity was waived by statute, thus affording a rational basis for a finding that the activity of the Department was tainted by its fraudulent conduct, if intentional (as opposed to merely negligent), existing both before and after the waiver of sovereign immunity.
[5] As previously noted, the plaintiffs' complaint was based on theories of negligence, nuisance, and trespass. Their appellate brief mentions but does not argue the trespass or nuisance theories as grounds for reversal of the trial court's order. Neither were these theories seriously addressed on oral argument. Accordingly, we deem these issues to have been essentially waived, Polyglycoat Corp. v. Hirsch Distributors, Inc., 442 So.2d 958 (Fla. 4th DCA 1983), pet. for rev. den., 451 So.2d 848 (Fla. 1984), and we consider the case as presenting primarily a cause of action based on negligence.
[6] Compare Cities Service Company v. State, 312 So.2d 799 (Fla. 2d DCA 1975), and Bunyak v. Clyde J. Yancey & Sons Dairy, Inc., 438 So.2d 891 (Fla. 2d DCA 1983), pet. for rev. den., 447 So.2d 885 (Fla. 1984), applying the doctrine of Rylands v. Fletcher, 1868, L.R.3H.L., imposing strict liability for the hazardous or abnormally dangerous use of one's land. Appellant's here make no claim of liability based on this theory, a fact we simply note without suggesting that the result would be different had such allegations been made.
[7] The complaint contains no allegation concerning the Department's violation, subsequent to the waiver statute, of any specific statutes or regulations imposing upon the Department duties with respect to old work or chemical disposal sites. Even had such allegations been made, recent decisions indicate that a question would remain as to whether the amount of resources and personnel which might be committed to the implementation or enforcement of such statutes or regulations would be classified as a policy decision, thus affording continued immunity from interference by the judicial process. See, e.g., Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985) (holding City's failure to enforce ordinance requiring impoundment of dangerous dogs implicated judgmental, policy-making activities for which City could not be held liable in suit by person but by a stray dog; but noting there may be other compelling circumstances where there is no room for the exercise of discretion, and which would subject a governmental unit to liability).
[8] Although we adhere to the rule favoring liberality in the amendment of pleadings, Townsend v. Ward, 429 So.2d 404 (Fla. 1st DCA 1983), we have here for review plaintiffs' second amended complaint, and our review of the record and the arguments and contentions of the parties convinces us that further leave to amend is not required in the interests of justice. International Patrol and Detective Agency, Inc. v. Aetna Casualty & Surety Company, 396 So.2d 774 (Fla. 1st DCA 1981), aff'd on other grounds, 419 So.2d 323 (Fla. 1982); Brown v. Montgomery Ward & Company, 252 So.2d 817 (Fla. 1st DCA 1971), cert. den., 257 So.2d 561 (Fla. 1972).
[9] As appellants point out, there are several exceptions to the general rule of non-liability of an employer to third persons for the torts of its independent contractor. One of these occurs where the employer has the right to direct and control the performance of the work or the manner of its accomplishment, Burch v. Strange, 126 So.2d 898 (Fla. 1st DCA 1961); Peairs v. Florida Publishing Co., 132 So.2d 561 (Fla. 1st DCA 1961). Another basis for potential liability appears when an employer-landowner has knowledge of a dangerous activity or condition created by the independent contractor and fails to prevent injuries to third persons, Maule Industries, Inc. v. Messana, 62 So.2d 737 (Fla. 1953); Maldonado v. Jack M. Berry Grove Corp., 351 So.2d 967 (Fla. 1977). Still another area of potential liability, known as the "inherently dangerous" exception, imposes upon the employer a non-delegable duty to third persons of care in contracting for the performance of inherently dangerous work and the operation of dangerous instrumentalities by an independent contractor. See, Florida Power and Light Co. v. Price, 170 So.2d 293 (Fla. 1964); Padilla v. Gulf Power Company, 401 So.2d 1375 (Fla. 1st DCA 1981); Fisherman's Paradise, Inc. v. Greenfield, 417 So.2d 306 (Fla. 3rd DCA 1982); Hill v. Walker's Cay Air Terminal, Inc., 405 So.2d 198 (Fla. 4th DCA 1981), pet. for rev. den., 412 So.2d 471 (Fla. 1982). As discussed elsewhere in this opinion, liability predicated upon these theories is unavailing in view of the sovereign immunity defense shielding the Department from liability in 1959 and thereafter until the enactment of the waiver statute in 1974, and because of the limiting effect of Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), and its progeny, on the state's post-waiver statute liability under the "planning-operational" dichotomy.
[10] As to the effect of contract provisions between the Department and its independent contractor, see cases cited, footnote 1, supra.
[1] See Davis v. State, Department of Corrections, 460 So.2d 452, 456-58 (Fla. 1st DCA 1984) (Ervin, J., dissenting).