460 So.2d 510 (1984)
GREAT LAKES DREDGING AND DOCK COMPANY, Appellant,
v.
SEA GULL OPERATING CORPORATION, Appellee.
No. 83-2243.
District Court of Appeal of Florida, Third District.
December 11, 1984.
*511 Gerald E. Rosser, Miami, for appellant.
Markus, Winter & Feldman and Stuart Markus and Sheldon I. Pivnik, Miami, for appellee.
Before SCHWARTZ, C.J., and HUBBART and BASKIN, JJ.
HUBBART, Judge.
This is an interlocutory appeal from a non-final order granting summary judgment on the issue of liability in favor of the plaintiff in an action for damages sounding in strict liability for ultra-hazardous or abnormally dangerous activity. We have jurisdiction to entertain this interlocutory appeal. Art. V, § 4(b)(1), Fla. Const.; Fla.R. App.P. 9.130(a)(3)(C)(iv).
The issue presented for review is whether the owner of a large rock-crushing machine, used to restore a public beach in a resort area, is strictly liable under the doctrine of Rylands v. Fletcher, L.R., 3 H.L. 330 (1868), to the owner of a nearby hotel for financial losses due to guest cancellations caused directly by the continuous, intense and disturbing noise emanating from the rock-crushing machine. Because (a) no complaint is made that the rock-crushing machine poses any physical danger of harm, much less an ultrahazardous or abnormal danger, to persons or property in the area, and (b) the financial losses suffered by the plaintiff were, in any event, outside the scope of any conceivable abnormal risk of harm posed by the machine, we conclude that the doctrine of Rylands v. Fletcher is wholly inapplicable to this case. We accordingly reverse the order under review and remand for further proceedings.

I
The material facts of this case are not in dispute. The plaintiff Sea Gull Operating Corporation ["Sea Gull"] owns and operates a beach front hotel in south Miami Beach, Florida, known as the Sea Gull Hotel. The defendant Great Lakes Dredging and Dock Company ["Great Lakes"] owns a large rock-crushing machine which measures twenty-four feet square at the base and stands between forty-five and forty-eight feet tall.
On or about June 25, 1981, the defendant Great Lakes placed this rock-crushing machine on a state-owned portion of the public beach adjacent to the Sea Gull Hotel, approximately 650 feet from the corner of the hotel. The machine was placed there pursuant to a contract which the defendant Great Lakes had with the United States Corps of Army Engineers as part of a large-scale beach restoration project covering the beach area located south of 21st Street on Miami Beach. The machine apparently crushes rock and sand which is pumped into it by pipeline from offshore, pulverizes the material to make it finer, and then deposits the sand on the beach.
Aside from its alleged unsightliness, the plaintiff Sea Gull's chief complaint against this machine is that it is excessively noisy. No claim is made that the machine poses a physical danger to life or limb of any person in the area, and no claim is made that the noise or vibrations caused by the machine pose a physical danger to the structure of any building or property in the area. The complaint is that the machine creates a continuous and intense noise which is so disturbing to the plaintiff's hotel guests that these guests have cancelled their hotel reservations in large numbers, *512 resulting in over $100,000 loss of business to the plaintiff.
The plaintiff Sea Gull sought an injunction against the placement of the rock-crushing machine near its hotel, in an action which it brought in the Circuit Court for the Eleventh Judicial Circuit of Florida. The trial court denied this injunction, after an evidentiary hearing, without prejudice to a possible claim for damages. The plaintiff Sea Gull then amended its complaint to state a cause of action for damages sounding in strict liability for ultrahazardous or abnormally dangerous activity. The defendant Great Lakes filed a general denial answer and set up certain affirmative defenses not relevant here.
Based on the testimony adduced at the injunction hearing, plus a supporting affidavit, the plaintiff Sea Gull moved for a summary judgment on the issue of liability. The basis of the motion was that the undisputed material facts in the record showed that the defendant Great Lakes was liable to the plaintiff under the Rylands v. Fletcher doctrine of strict liability for ultrahazardous or abnormally dangerous activity. The trial court heard and granted the motion; the defendant Great Lakes appeals.

II
In accord with a growing body of jurisdictions in this country, Florida courts have adopted the doctrine of strict liability for ultrahazardous or abnormally dangerous activity as established by Rylands v. Fletcher, supra, and reformulated by the Restatement of Torts §§ 519, 520 (1938), and Restatement (Second) of Torts (Tent. Draft No. 10, 1964). Hutchinson v. Capelletti Brothers, 397 So.2d 952 (Fla. 4th DCA 1981); Cities Service Co. v. State, 312 So.2d 799 (Fla. 2d DCA 1975); see also Pensacola Gas Co. v. Pebley, 25 Fla. 381, 5 So. 593 (1889). In the leading case of Cities Service Co. v. State, supra, the Second District Court of Appeal of Florida, speaking through Judge Grimes, traces the history of the Rylands v. Fletcher doctrine, concludes that it is the law of Florida, and adopts the doctrine as reformulated by the American Law Institute, to wit:
"The American Law Institute has considered this question in §§ 519 and 520 of the Restatement of the Law of Torts (1938).
These sections state:
`§ 519. MISCARRIAGE OF ULTRAHAZARDOUS ACTIVITIES CAREFULLY CARRIED ON.
Except as stated in §§ 521-4, one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm.
`§ 520. DEFINITION OF ULTRAHAZARDOUS ACTIVITY.
An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and
(b) is not a matter of common usage.' Recognizing the evolving nature of the law in this area, the American Law Institute published Tentative Draft No. 10 in 1964 in which certain changes were recommended for §§ 519 and 520. Thus, in § 519 and § 520 the substitution of the words `abnormally dangerous' is suggested in place of the word `ultrahazardous.' In § 520, the following factors are said to be pertinent in determining whether an activity is abnormally dangerous:
`(a) Whether the activity involves a high degree of risk of some harm to the person, land or chattels of others;
(b) Whether the harm which may result from it is likely to be great;
(c) Whether the risk cannot be eliminated by the exercise of reasonable care;
(d) Whether the activity is not a matter of common usage;

*513 (e) Whether the activity is inappropriate to the place where it is carried on; and
(f) The value of the activity to the community.'"
312 So.2d at 802 (footnote omitted).
Central to this doctrine, however, is a finding that the ultrahazardous or abnormally dangerous activity poses some physical, rather than economic, danger to persons or property in the area, which danger must be of a certain magnitude and nature. "For an activity to be abnormally dangerous, not only must it create a danger of physical harm to others but the danger must be an abnormal one." Restatement (Second) of Torts § 520 comment f (1976) (emphasis added). Liability for engaging in such activity, in turn, "is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous," Restatement (Second) of Torts § 519(2) (1976); stated differently, "[t]he rule of strict liability ... applies only to harm that is within the scope of the abnormal risk that is the basis of the liability." Restatement (Second) of Torts § 519 comment e (1976). For example, the noise caused by non-negligent blasting activity, which frightens mink on a nearby mink farm to such an extent that they kill their young, does not render the blasting party liable for the loss of the mink; the damage suffered here is not the kind of harm that is within the scope of the abnormal risk posed by blasting activity. Foster v. Preston Mill Co., 44 Wash.2d 440, 268 P.2d 645 (1954); Restatement (Second) of Torts § 519 comment e, illustration 1 (1976).

III
Turning to the instant case, we have no difficulty in concluding that the doctrine of Rylands v. Fletcher imposing strict liability for ultrahazardous or abnormally dangerous activity, has no application in this case, and, that, accordingly, the order granting partial summary judgment for the plaintiff Sea Gull must be reversed. We reach this conclusion for two reasons.
First, there is utterly no showing in this record that the rock-crushing machine poses any physical danger to any person or property in the immediate area where it is situated on the beach, much less that the danger posed is ultrahazardous or abnormally dangerous. Indeed, the plaintiff Sea Gull's sole complaint with this machine is that it is excessively noisy. This being so, it is plain that the operation of the rock-crushing machine was not in any sense an ultrahazardous or abnormally dangerous activity within the meaning of the Rylands v. Fletcher doctrine.
Second, to the extent that the rock-crushing machine might conceivably be said to be engaged in ultrahazardous or abnormally dangerous activity [in that the machine could perhaps spew out loose rocks, topple over, cause physical tremors in the ground, or otherwise physically injure persons or property in the area], it is plain that the damages suffered by the plaintiff Sea Gull were entirely outside the abnormal risk of physical harm which this machine could possibly create. The rock-crushing machine did not, in fact, spew out loose rocks, topple over, or cause physical tremors in the ground; indeed, it caused no physical damage whatever to persons or property in the area. All it did was create an excessive and irritating noise which caused the plaintiff Sea Gull's hotel guests to check out in large numbers, resulting in a loss of business to the said plaintiff. Like the killing of the young mink in Foster v. Preston Mill Co., supra, the damages suffered by the plaintiff Sea Gull were entirely outside the abnormal risk of physical harm posed by the defendant's alleged ultrahazardous or abnormally dangerous activity. This being so, there can be no recovery for these damages under the Rylands v. Fletcher doctrine.
This is not to say, however, that the plaintiff Sea Gull has no remedy for its financial losses in this case. It may very well be that a cause of action sounding in nuisance lies for the damages suffered herein due to the machine's excessive noise. See Baum v. Coronado Condominium Association, 376 So.2d 914 (Fla. 3d DCA *514 1979), and authorities collected; Annot., 24 A.L.R.2d 194 § 24 (1952), and authorities collected. Upon remand, the plaintiff Sea Gull shall therefore be permitted, if it so desires, to amend its complaint to state a cause of action for nuisance.
The order under review is reversed and the cause is remanded to the trial court for further proceedings.