578 So.2d 363 (1991)
FUTURA REALTY, Appellant,
v.
LONE STAR BUILDING CENTERS (EASTERN), INC., et al., Appellees.
Nos. 90-821 to 90-824.
District Court of Appeal of Florida, Third District.
April 9, 1991.
Certification Denied April 26, 1991.
*364 Lapidus & Frankel and Richard L. Lapidus, Miami, for appellant.
Morgan, Lewis & Bockius, Daniels & Talisman and Sam Daniels, Peeples, Earl & Blank, Jorden, Schulte & Burchette, and Frank Burt, Squire, Sanders & Dempsey and James M. Porter and Anne Talbot, Miami, for appellees.
Before NESBITT, BASKIN and JORGENSON, JJ.
PER CURIAM.
In these consolidated appeals, appellant, Futura Realty, Inc. (Futura), the current corporate owner of a parcel of land at 7000 Coral Way in Dade County (the site), claims first, that the property's immediate previous owner, Stanley S. Davidson (Davidson), committed fraud by failing to inform appellant of certain pollution problems on the property until after its purchase, and second, that Davidson, as well as a prior owner, CSX Transportation, Inc. (Seaboard), and lessee, Lone Star Building Centers (Eastern), Inc. (Lone Star), are strictly liable to Futura for damage done to the site through the use of certain ultrahazardous chemicals.[1] The trial court granted summary judgments to each defendant. We affirm upon the following analysis.
Futura's claims rest on two key cases, both of which we find inapplicable to the facts at hand. First, relying on Johnson v. Davis, 480 So.2d 625 (Fla. 1985), Futura claims Davidson knew of the site's pollution prior to the site's sale to Futura and that because Davidson did not inform Futura as to the pollution and because the pollution was not readily observable, Davidson is liable to Futura for fraudulent concealment. We disagree that Johnson controls. In Johnson, the purchasers of a home brought an action against the home's vendors relying on the vendor's false statement that there was no problem with the home's roof. The court concluded that the doctrine of caveat emptor does not exempt a home's vendor from responsibility for statements and representations which he makes to induce a purchaser to act when, under the circumstances, the statements amount to fraud in the legal sense. 480 So.2d at 627. Further, that case established that where the home vendor knows of facts materially affecting the value of the property which are not readily observable and are not known to the purchaser, he is under a duty to disclose them to the purchaser. Finally, the court observed, "[T]his duty is equally applicable to all forms of real property, new and used."
It appears that Futura rests its claim of fraud in this sale of a commercial site on that statement. However, the statement when read in context, as it must be, clearly applies solely to the sale of homes. Nowhere does the court conclude that the duty of disclosure is present in the sale of commercial property. Further, the cases relied on in Johnson are not commercial land sale cases. Nowhere does Johnson address or change the long line of case law establishing caveat emptor as the rule in the sale of commercial property. See Conklin v. Hurley, 428 So.2d 654 (Fla. 1983) (doctrine of implied warranty inapplicable to sale of land; purchasers of unimproved realty more reasonably expected to inspect property knowledgeably before purchase and to be able to bargain for express warranty). Johnson simply does not impose *365 a duty of disclosure in a commercial setting.
Thus, we need not consider the factual allegations as to the obvious nature of the large treatment vats on the site or the visible chemical spills discoloring soil on the property. See Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978) (latent defect is one not discoverable by reasonable inspection); Maas Bros., Inc. v. Bishop, 204 So.2d 16 (Fla. 2d DCA 1967) (latent defect is one not discernible by the exercise of reasonable care). Likewise, we need not evaluate the experienced nature of Futura's representative in the sale, as a longtime developer, real estate broker and lawyer. See U.S. Home Corp. v. Metropolitan Property & Liab. Ins. Co., 516 So.2d 3, 4 (Fla. 2d DCA 1987) (what may be a latent defect to the average person may become a patent defect in the eyes of a person possessing superior knowledge). No questions of fact precluding summary judgment remain.
Second, Futura claims reliance on the rule of strict liability for ultrahazardous activity resulting in damage to a neighbor's property as laid down by the English court in Rylands v. Fletcher, L.R., 3 H.L. 330 (1868), and long followed by Florida courts. See Great Lakes Dredging and Dock Co. v. Sea Gull Operating Corp., 460 So.2d 510 (Fla. 3d DCA 1984) (landowner owes duty to neighbor not to permit hazardous substances to escape to neighbor's land). See also Pensacola Gas Co. v. Pebley, 25 Fla. 381, 5 So. 593 (1889); Bunyak v. Clyde J. Yancey and Sons Dairy, Inc., 438 So.2d 891 (Fla. 2d DCA 1983), review denied, 447 So.2d 885 (Fla. 1984); Cities Serv. Co. v. State, 312 So.2d 799 (Fla. 2d DCA 1975).
However, beyond relying on these cases, Futura asks this court to extend the rule of strict liability to apply to remote owners and users of the land and to extend the cause of action from a claim available to neighbors to a claim available to subsequent owners of the property. We find Futura's argument for an extension of the law of strict liability unpersuasive. Futura asks us to stretch Rylands based upon the single case of T & E Industries v. Safety Light Corp., 227 N.J. Super. 228, 546 A.2d 570 (1988), cert. granted, 117 N.J. 119, 564 A.2d 848 (1989). In that case, a purchaser of land brought an absolute liability claim against previous owners of property who had operated a radium processor and had dumped waste on the land. The court held previous owners were absolutely liable to the subsequent purchaser of property, noting, "We see no practical or legal distinction between the rights of a successor in title to use and enjoy its land and the rights of a neighboring property owner."
We disagree with that court's analysis and find a better reasoned approach to this issue in Wellesley Hill Realty Trust v. Mobil Oil Corp., 747 F. Supp. 93 (D.Mass. 1990). In Wellesley, the plaintiff asserted that Mobil Corporation had contaminated property by releasing oil and hazardous materials during Mobil's ownership when it operated a service station on a property. The plaintiff purchased the property from Mobil's vendee and then sued Mobil on eight counts including strict liability resulting from the conduct of an abnormally dangerous activity. The court held that the plaintiff failed to state a claim for strict liability since Mobil's operation of the gas station "caused harm to property of its own, not property of another."
In the case at hand, Futura was simply not bringing a claim as an injured adjoining landowner. The commercial property vendor owes no duty for damage to the land to its vendee because the vendee can protect itself in a number of ways, including careful inspection and price negotiation. This is the vital legal and practical distinction between the duty owed a neighbor and the duty owed a successor in title which T & E Industries failed to identify.
Accordingly, because we reject Futura's claim that Johnson v. Davis controls as to its fraud claim and because we reject the argument that Rylands v. Fletcher should be extended to apply to Futura's claims of strict liability, we affirm the summary judgments rendered below.
NOTES
[1] Seaboard owned the land from 1941 through 1980. During this period, Seaboard leased the land which was the site of a wood treatment plant, first to Miami Wood Treating Facility from 1941 to 1968, then to Lindsley Lumber, a subsidiary of Lone Star from 1968 to 1972. Lone Star acquired the plant in 1972 and continued operating it until 1979, when it sold the facility to Davidson Lumber. Seaboard's ownership of the land terminated in 1980, when Davidson purchased the land beneath the woodtreating plant. Davidson ceased operation of the plant in 1981. In 1982, Futura entered the picture, purchasing the property from Davidson to conduct its real estate development business. See Seaboard Sys. R.R. v. Clemente, 467 So.2d 348, 352 (Fla. 3d DCA 1985). The process by which the environmental hazards emanating from the site accumulated are described in Seaboard at 351-52.