618 So.2d 1372 (1993)
Fred MOSTOUFI, Appellant,
v.
PRESTO FOOD STORES, INC., a Florida corporation, Hugh C. Robinson, III, Carol M. Robinson and Robert Stillings, Appellees.
No. 92-01138.
District Court of Appeal of Florida, Second District.
April 16, 1993.
Rehearing Denied June 7, 1993.
Russell S. Thomas, Jodi L. Corrigan and John J. Agliano of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, for appellant.
David A. Maney of Maney, Damsker & Arledge, P.A., Tampa, and James S. Moody, Jr., Plant City, for appellees.
Vivian Garfien of Dept. of Environmental Regulation, Tallahassee, for amici curiae State, Dept. of Environmental Regulation, and Thomas W. Reese, St. Petersburg, amici curiae ManaSota-88, Inc.
*1373 CAMPBELL, Acting Chief Judge.
Appellant, Fred Mostoufi, challenges the final judgment which dismissed his complaint against appellees, Presto Food Stores, Inc. (Presto), and Hugh C. Robinson, III, Carol M. Robinson and Robert Stillings, individually, as officers and directors of Presto. Appellant's two-count complaint sought monetary damages for petroleum contamination of appellant's commercial real property which appellant alleged was caused by appellees during the time that Presto owned the property as a remote predecessor in title to appellant. We affirm the dismissal of appellant's complaint for failure to state a cause of action for compensable damages against appellees.
Appellant raises two issues in this appeal. His first challenge is to the trial court's apparent finding that appellant has no cause of action for damages. Appellant asserts that neither Presto's status as a remote predecessor in title nor the doctrine of caveat emptor are valid defenses to the statutory cause of action that appellant alleges was created by section 376.313, Florida Statutes (1989). We conclude, however, that section 376.313 does not create a statutory cause of action as sought to be alleged by appellant. We further conclude that the doctrine of caveat emptor does bar appellant from recovering damages from appellees for appellant's alleged loss of market value of his commercial real property. Because of those conclusions, we need not address appellant's second issue relating to any liability of the individual appellees as officers or directors of Presto.
Appellant Mostoufi is the owner and operator of a convenience store that sells gasoline in Land-O-Lakes. Appellee Presto previously owned and operated the real property in question as a convenience store that sold gasoline for almost nine years, from February 23, 1977 through December 31, 1986. During that time, Presto installed four underground petroleum storage tanks and related gasoline dispensing equipment. In 1985, Presto leased the property to Emma and Azdollah Amroei.
Later in 1985, Presto removed quantities of water from one or more of the underground storage tanks. In July 1986, Presto abandoned one of the underground petroleum storage tanks by filling it with lime dust. The abandoned tank was never registered with the appropriate authorities.
On December 31, 1986, the Amroeis exercised their option to purchase the property from Presto. On March 19, 1987, the Amroeis conveyed the property to appellant, who alleges he believed he was purchasing a facility with only three underground storage tanks. He alleges he was unaware of the abandoned tank. However, he makes no allegations of fraud or misrepresentation by appellees in regard to his purchase of the property or in the sale to his immediate predecessor in title, the Amroeis.
On April 2, 1990, the Pasco County Department of Health and Rehabilitative Services (HRS) discovered the abandoned tank while conducting a compliance inspection of the facility. Inspectors also discovered petroleum contamination on the property. HRS notified appellant of the abandoned tank. There was no readily observable physical evidence of the presence of the tank or of the petroleum pollution. Appellant subsequently reported the contamination to Florida Department of Environmental Regulation (FDER) as required under FDER regulations and conducted a precision tank tightness test on the three petroleum tanks still in use. Those three tanks passed the test. Pasco County HRS then ordered appellant to institute a contamination assessment and remedial action under chapter 17-770, Florida Administrative Code. Appellant has taken no such remedial action and neither is he legally obligated to do so under the facts as they are presented here. See Sunshine Jr. Stores, Inc. v. State Dep't of Envtl. Regulation, 556 So.2d 1177 (Fla. 1st DCA), rev. denied, 564 So.2d 1085 (Fla. 1990).
Appellant then brought his action against appellees attempting to allege in Count I a strict liability statutory cause of action based on section 376.313, and in Count II a common law negligence cause of action using section 376.313 as a statutory *1374 standard of care which appellees were alleged to have breached. A crucial factor in our conclusions derives from the fact that appellant has in paragraph sixteen of his amended complaint set forth the only allegations of damage that appear in his complaint and are pled as applicable to both counts. That paragraph states as follows:
16. As a direct and proximate result of Defendants' improper abandonment of the Abandoned Tank, Plaintiff has been damaged in that the Property has been contaminated with petroleum contamination, the discovery of contamination has reduced the value of Plaintiff's property and also that Plaintiff has been ordered to incur significant costs and expense in rehabilitating the Property.
It is without dispute that appellant grounds his complaint against appellees on the statutory language of section 376.313(3). That section, in its pertinent parts, provides as follows:
[N]othing contained in ss. 376.30-376.319 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.319... . [I]n any such suit, it is not necessary for such person to plead or prove negligence in any form or manner. Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred.
Appellant argues that section 376.313(3) creates a statutory cause of action in private parties to seek monetary damages resulting from the mere fact of the discharge of petroleum without alleging any other demonstrable damages except for alleged loss of market value. The trial judge dismissed appellant's complaint relying on Futura Realty v. Lone Star Bldg. Centers, (Eastern), Inc., 578 So.2d 363 (Fla. 3d DCA), rev. denied, 591 So.2d 181 (Fla. 1991), for the rule that caveat emptor bars appellant's action against appellees for undisclosed defects in the commercial real property, particularly when appellee Presto was a remote predecessor in title to appellant.
In arguing that section 376.313(3) creates a private right of action for damages, appellant makes the following arguments in his initial brief:
This is a matter of first impression, as there is no case law interpreting the private party recovery provisions of Florida Statutes section 376.313. However, where a Florida law is patterned after a federal law, the Court must look to the interpretation of the Federal Courts for guidance in construing the Florida law.
In the Federal Courts, caveat emptor has been explicitly rejected as a defense to statutory liability under federal environmental laws. Smith Land & Improvement Corp. v. Celotex Corp., 851 F.2d 86 (3d Cir.1988) (en banc). Thus, case law requires that the Corporate Defendant's status as a remote predecessor in title is irrelevant and immaterial in determining liability for petroleum contamination under Florida Statutes section 376. So long as all facts alleged are taken as true, Mostoufi has shown that Presto has been sued not because of its status as a prior owner of contaminated land, but rather because it was a "person" who caused a discharge in violation of Florida Statutes Chapter 376. Thus, the Plaintiff has stated a cause of action against Presto upon which relief may be granted.
... .
There is no case law in Florida interpreting the propriety of caveat emptor as a defense to an action brought under Florida Statutes Chapter 376. However, Florida Statutes section 376.315, unequivocally states the legislative intent that Sections 376.30-376.319 "shall be liberally construed to effect the purposes set forth under Sections 376.30-376.319 and the Federal Water Pollution Control Act" ("FWPCA") (emphasis added). The FWPCA specifically allows private party actions against any person who violates the act. 33 U.S.C.A. § 1365(a). By drawing reference to a Federal statute as guidance for statutory interpretation, Florida Statutes section 376.315 mandates *1375 that Florida courts construe Florida Statutes, sections 376.30-376.319, in accordance with similarly patterned Federal law.
When a Florida statute is patterned upon Federal law on the same subject, Florida courts have consistently held that the State statute should be given the same interpretation in the State courts as its prototype has been given in the Federal courts. Pasco County School Bd. v. Florida Public Employees Relations Comm'n., 353 So.2d 108, 116 (Fla. 1st DCA 1977) (citing to Kidd v. Jacksonville, 97 Fla. 297, 120 So. 556 (1929)).
We find appellant's analogy to federal law and particularly the Federal Water Pollution Control Act (FWPCA), 33 U.S.C.A. § 1365(a), puzzling in that the federal courts, including the United States Supreme Court, have clearly held that FWPCA does not create a cause of action in private parties to such compensatory damages for petroleum pollution.
Perhaps the most comprehensive discussion as to any private rights for compensatory damages that may exist by reason of the FWPCA appears in City of Evansville, Ind. v. Kentucky Liquid Recycling, Inc., 604 F.2d 1008 (7th Cir.1979), cert. denied, 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980). The plaintiffs in that case sought to recover damages incurred by reason of the defendants' discharges of pollutants into the Ohio River relying in part on the provisions of the FWPCA. The court there stated, in discussing the "citizen suits" provision and the "savings clause" provision of the FWPCA (33 U.S.C.A. § 1365), as follows:
Furthermore, even if the requisite notice had been given, § 505(a) would not have authorized plaintiffs' claim. That provision authorizes a civil action against a party "alleged to be in violation" of effluent standards or limitations prescribed under the Act or an order of the Administrator or a state with responsibility under the Act. It does not provide for suits against parties alleged to have violated an effluent standard or limitation in the past or for recovery of damages. The legislative history of the provision leaves little doubt that neither class actions nor actions for damages were contemplated. ... Thus, unless plaintiffs can establish some other basis for this claim, the district court properly dismissed it.
Failure to comply with the notice provisions of § 505(b) does not foreclose any other right to relief a plaintiff might have. The saving clause, § 505(e), 33 U.S.C. § 1365 (e), expressly preserves any such rights. Cf. City of Highland Park v. Train, supra, 519 F.2d 681 at 691-693 [(7th Cir.1975)]; see also Illinois v. Milwaukee, 599 F.2d 151 (7th Cir. 1979) (holding that the Federal Water Pollution Control Act does not preclude a federal common law action under 28 U.S.C. § 1331). The saving clause preserves rights "under any statute or common law" but does not itself create any right. Assuming that the Act itself is within the term "any statute" (but see note 20 and accompanying text, infra), still no right exists under the Act unless it can be inferred, because none is expressed.
... .
Plaintiffs cite no particular provision of the Act as supporting their claim for relief, but presumably they rely on § 301, 33 U.S.C. § 1311, which proscribes the discharge of any pollutant except in compliance with the provisions of the Act. Neither that section nor any other section of the Act contains any suggestion that Congress intended to confer a benefit or right on any particular segment of the public.
Moreover, it is significant that the Act contains a section specifically addressed to private rights of action, § 505, which not only provides for citizen suits but also contains, in subsection (e), a saving clause providing that nothing in the section is to affect any right "under any statute or common law." Congress having thus specifically addressed the subject of private remedies, it is reasonable to assume that it said all that it intended on that subject. Cf. Touche Ross v. Redington, supra, [442] U.S. *1376 [560] at [568-571], 99 S.Ct. 2479 [2485-2487, 61 L.Ed.2d 82 (1979)].
Section 505 evidences a congressional intent to carefully channel public participation in the enforcement of the Act. Before commencing a citizen suit the plaintiff must give notice not only to the alleged violator but also to the Administrator and the state in which the violation occurs. If either the Administrator or the state initiates adequate enforcement proceedings, the private action is foreclosed, although the complainant is authorized to intervene "as of right." § 505(b), 33 U.S.C. § 1365 (b).
The legislative history of the Act contains no specific answer to the question of whether § 301 creates a private right of action. The reference to § 505 in the Senate Report on S. 2770, quoted above, in referring, inter alia, to damage actions, interprets the statutory phrase "under any statute or common law" as "under any other law." Even if this was intended only as paraphrase, it suggests that a right of action for damages must be found outside the Act itself. And Congress' rejection of all but two of the proposed exceptions to the requirement of a 60-day waiting period for a citizen suit, see note 16, supra, reinforces the evidence in § 505 itself of an intent to circumscribe private rights of action under the FWPCA.
What we have said about § 505 is also applicable with respect to the third factor identified in Cort v. Ash, [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)] namely, "is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" 422 U.S. at 78, 95 S.Ct. at 2086. Section 505 expresses Congress' judgment as to the kind and extent of private enforcement of the FWPCA. In a private suit under § 505(a) a court, at the behest of a private plaintiff, may enforce compliance with effluent standards and limitations, require the Administrator to perform a duty to act, and impose civil penalties under § 309(d), 33 U.S.C. § 1319 (d). Implication of a private remedy for damages under § 301 would be inconsistent with the congressional purpose implicit in the Act of encouraging private participation in the enforcement of the Act within the channels expressly provided. [Citations omitted.]
... .
We conclude that plaintiffs have not carried their burden of establishing that Congress intended to create a private right of action for damages against a violator of the FWPCA in favor of a person injured by pollutant discharges.
604 F.2d at 1014-1016 (Footnotes omitted; emphasis added.) City of Evansville is cited with approval by the United States Supreme Court in Middlesex County Sewage Authority v. National Sea Clammers Association, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).
Appellant cites a number of federal cases which hold that the doctrine of caveat emptor is not a defense to actions brought pursuant to the FWPCA, 33 U.S.C.A. § 1365. See Smith Land & Improvement Corp. v. Celotex Corp., 851 F.2d 86 (3d Cir.1988), cert. denied, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). However, the reason for not applying the caveat emptor rule in regard to the federal act is that the private or "citizens suits" authorized by section 1365 have been clearly interpreted to provide for private actions only to enforce the regulatory and clean-up provisions of the act and do not relate to private causes of action for damages.
It is also puzzling that appellant relies for authority for its position on the federal act because the language of the federal act, 33 U.S.C.A. § 1365, and the Florida act, section 376.313(3), are quite dissimilar. Admittedly the Florida statutory language is less than a model of clarity. The key to our conclusion regarding the statute is that it is clearly framed so as not to "prohibit" a person from bringing a cause of action for any damages that may accrue because of a discharge of pollutants. Because the statute is framed so as not to "prohibit" bringing a cause, we conclude we should not interpret the statute as "creating" a new cause of action that did *1377 not theretofore exist. It seems clear to us that the intent of the statute is to insure that it is not interpreted as preempting any private rights that were already in existence. See Punta Gorda v. McSmith, Inc., 294 So.2d 27 (Fla. 2d DCA 1974). We are constrained to interpret statutory enactments so as not to alter the common law unless the statutory language is clear in its intent to do so. Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362 (Fla. 1977); State v. Egan, 287 So.2d 1 (Fla. 1973).
While we are not required by this appeal to reach the issue, there is some indication of an intent by the legislature, in enunciating standards of proof in section 376.313(3) and (4), to impose in some existing causes of action a new standard of care of strict liability for pollution damages that are found to have occurred. However, even if the standard of care is modified by the statute in pollution discharge cases, that does not equate with the creation of a new cause of action. A cause of action consists of two parts, a wrong and resulting demonstrable damage. See McIntyre v. McCloud, 334 So.2d 171 (Fla. 3d DCA 1976); Scott-Steven Dev. Corp. v. Gables By The Sea, Inc., 167 So.2d 763 (Fla. 3d DCA 1964), cert. denied, 174 So.2d 32 (Fla. 1965); 1 Fla.Jur.2d Actions § 26. Under common law doctrines, without resulting demonstrable damage, a wrong in itself is not compensable. There is no clear legislative mandate in section 376.313 to provide otherwise. Moreover, to interpret section 376.313 otherwise would lead to a subversion of the principal purpose of sections 376.30 to 376.319, Florida Statutes (1989). The chief thrust of those statutory enactments is to protect the lands and waters of Florida and to provide for the prompt containment and removal of damage to those lands and waters by pollutant discharge. See § 376.30. To interpret section 376.313(3) to provide for a private right of action for damages from pollutant discharge unconnected with the cleanup or removal of the discharge would impact negatively on the stated purposes of the act. We conclude that the legislature intended to provide for no such private action for damages. Absent such a statutory provision for damages from a newly created cause of action, appellant cannot recover for any damages to the property that occurred before he purchased the property. The doctrine of caveat emptor protects a seller of commercial real property from any liability to the purchaser of that property for any condition of that property that preexists the sale. The rule has been modified as to sales of residential real property. Johnson v. Davis, 480 So.2d 625 (Fla. 1985). While the wisdom of applying the doctrine to commercial real property continues to be questioned, that application has not yet been abrogated. See Haskell Co. v. Lane Co., Ltd., 612 So.2d 669 (Fla. 1st DCA 1993). Moreover, even if caveat emptor did not apply to commercial real estate transactions, there existed no duty to disclose between appellees and appellant, a remote purchaser not in privity with appellees.
Affirmed.
FRANK and PARKER, JJ., concur.