779 So.2d 503 (2000)
Janie L. MORGAN, Appellant,
v.
W.R. GRACE & CO.CONN. and Florida Phosphate Council, Inc., Appellees.
No. 2D99-3401.
District Court of Appeal of Florida, Second District.
December 8, 2000.
*504 Kelley B. Gelb and Kevin A. Malone of Krupnick, Campbell, Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., Fort Lauderdale, for Appellant.
Robert B. Nadeau, Jr., and William C. Turner, Jr., of Akerman, Senterfitt & Eidson, P.A., Orlando, for Appellee W.R. Grace & Co.Conn.
Steven L. Brannock and William S. Dufoe of Holland & Knight, LLP, Lakeland, for Appellee Florida Phosphate Council.
ALTENBERND, Acting Chief Judge.
Janie L. Morgan appeals a final judgment dismissing with prejudice her amended complaint against W.R. Grace & Co. Conn. (W.R.Grace) and the Florida Phosphate Council (the Council). We affirm the judgment in favor of the Council. We also agree that the trial court properly entered the order of dismissal in favor of W.R. Grace. However, with some reluctance, we reverse the final judgment against W.R. Grace to permit Ms. Morgan a final chance to plead a cause of action. See Kapley v. Borchers, 714 So.2d 1217 (Fla. 2d DCA 1998).
Ms. Morgan owns and lives in a house at 511 Forest Glenn Avenue in Lakeland, Florida. In her pleadings, she claimed that her home is unsafe because of radiation from uranium and other radioactive material in the soil. She provided no factual detail in her complaint concerning the level or type of radiation. She did not claim that any governmental regulatory body has declared her home unsafe or ordered any clean-up. She did not explain why, when, or how she came to decide that her property was radioactive. Her complaint *505 did not allege how long she has lived in this home, from whom she purchased the home, or when that purchase occurred. The developer and the builder of the home were not sued or identified.
Ms. Morgan sued W.R. Grace claiming only that it mined and reclaimed this land at some unspecified earlier time. One is left to assume that W.R. Grace sold this land to someone who developed it as a residential property. Eventually Ms. Morgan purchased the home.
Ms. Morgan sued the Council because it is a trade group in existence since 1966, which predictably has issued favorable public statements to the general public about the phosphate industry and the benefits of reclaimed phosphate mines. Ms. Morgan attached various pamphlets to her complaint, but never alleged that these publications existed when she purchased her home or that she read them before she purchased her home. None of the publications describes the land that she purchased or the neighborhood in which she lives.
Ms. Morgan's complaint and amended complaint attempted to allege numerous theories against the two defendants. She included counts against both parties for ultrahazardous activity, fraud, and negligent misrepresentation, and additional separate counts against W.R. Grace for assault and battery, nuisance, violation of statutes, negligence, and failure to warn.[1] Significantly, her pleadings did not allege that she sustained any bodily injuries or traditional property damage. Her many counts all requested the same relief-"the cost of cleanup of the property so that radiation exposure is returned to background level, the reduced value of the property, damages resulting from the impact of public fear of radiation contamination, and ... emotional distress as a result of the knowledge that she and her family are being exposed to harmful levels of radiation." The "cost of cleanup" is not for expenses already incurred, but rather to fund a cleanup that she would like to conduct. We conclude that the trial court properly dismissed with prejudice each of these claims, with the exception of the negligence claim, which should have been dismissed without prejudice.

1. Ultrahazardous Activity.
In her initial complaint, Ms. Morgan attempted in a cursory manner to allege a cause of action for "ultrahazardous activity" against both the Council and W.R. Grace. With respect to the Council, Ms. Morgan did not assert that it engaged in an ultrahazardous activity, but instead challenges its "marketing, promoting and otherwise encouraging" the sale of radioactive land as residential properties. Marketing, promoting, and encouraging are not activities in and of themselves that are "ultrahazardous" and cannot be a source for imposing strict liability on the Council, particularly given the First Amendment concerns this would raise. Cf. Pfizer, Inc. v. Giles (In re Asbestos Sch. Litig.), 46 F.3d 1284 (3d Cir.1994) (issuing writ of mandamus based upon trial court's denial of Pfizer's motion for partial summary judgment on conspiracy count that attempted to hold Pfizer responsible for codefendant's actions simply by virtue of its participation in trade organization; trial court's ruling caused irreparable harm to Pfizer's First Amendment rights).
With respect to W.R. Grace, Ms. Morgan cited no authority that reclamation of phosphate lands is an ultrahazardous activity that justifies the imposition of strict liability for these types of alleged economic injuries suffered by a subsequent purchaser of the land. In a somewhat similar context, the Third District rejected such a claim against a prior owner of property. See Futura Realty v. Lone Star *506 Bldg. Ctrs., 578 So.2d 363 (Fla. 3d DCA 1991). We are not persuaded in this case to recognize such a claim.

2. Fraud and Negligent Misrepresentation.
The trial court properly dismissed the counts for fraud and negligent misrepresentation against both the Council and W.R. Grace for two reasons. First, fraud must be alleged with such particularity as the circumstances permit. See Fla. R. Civ. P. 1.120(f). The initial complaint clearly violated this rule. The amended complaint did not materially alter the allegations of fraud. We conclude that the requirement that fraud be pleaded with specificity also applies to claims for negligent misrepresentation. It is significant that the trial court gave Ms. Morgan an additional opportunity to amend her complaint as to the theory of negligent misrepresentation and she declined to further amend her pleadings.
Even from these unspecific pleadings, it is clear that Ms. Morgan is not pursuing a theory of fraud or traditional negligent misrepresentation. In fact, she never alleges that either W.R. Grace or the Council ever made misrepresentations to her personally that were material to her decision to buy this house. Rather, Ms. Morgan asserts that W.R. Grace and the Council made misrepresentations to others. She asserts that the defendants' actions in promoting the use of reclaimed land to governmental agencies and the public at large created a widespread false impression that these lands were safe for residential purposes.
This theory is more properly classified as an attempt to plead a claim for false information negligently supplied for the guidance of others under section 552 of the Restatement (Second) of Torts (1977). See Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334 (Fla.1997) (approving use of section 552 of the Restatement). Such a claim requires allegations that the defendant "supplie[d] false information for the guidance of others in their business transactions" and that the plaintiff suffered "pecuniary loss" caused by justifiable reliance upon the false information. In pursuing such a claim, however, the plaintiff must plead and establish that she is one of a limited group of persons for whose benefit and guidance the defendant intended to supply this type of information and that the defendant intended the information to influence her transaction or a substantially similar transaction.
In this case, Ms. Morgan maintains that W.R. Grace and the Council published various documents aimed at the general public. Ms. Morgan does not identify any limited group of recipients. Instead, Ms. Morgan appears to concede that the documents were prepared for broad distribution and broad public relations purposes. Ms. Morgan does not claim that she read and relied upon specific publications or that W.R. Grace or the Council intended them to influence her decision to buy this house from some undisclosed person or intended to influence similar transactions. Instead, she argues that the publications simply lulled the general public, including her, into a false sense of security about the safety of such reclaimed land. Ms. Morgan has not alleged an actionable false statement under these circumstances. We therefore affirm the dismissal of these counts with prejudice.

3. Assault and Battery.
Ms. Morgan alleges that the radiation exposure attributable to the actions of W.R. Grace constitutes an ongoing assault and battery to her person. Nonetheless, Ms. Morgan expressly claims that her action is not one for personal injuries. At the hearing on the motion to dismiss, her lawyer represented that her theory was not a "fear of cancer" theory. See, e.g., Eagle-Picher Indus., Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985). Nor did she assert that she has incurred an injury *507 that requires increased medical monitoring. See, e.g., Petito v. A.H. Robins Co., 750 So.2d 103 (Fla. 3d DCA 1999). Rather, Ms. Morgan seeks only the clean-up costs for her property. We fail to see how Ms. Morgan can allege a violation of a common law right protecting her person in order to recover these economic damages related to her property. She has cited no case authority in support of this proposition.

4. Nuisance.
"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word `nuisance.'" W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 86, at 616 (5th ed.1984). Nevertheless, we conclude that Ms. Morgan has not alleged a theory of nuisance, entitling her to monetary damages, based upon an alleged condition on her own property, which existed at the time she purchased the land. See, e.g., Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303 (3d Cir.1985). Her initial complaint contained minimal allegations addressing this theory. She did not even attempt to improve upon those allegations in the amended complaint. Accordingly, the trial court properly dismissed this count with prejudice.

5. Violation of Statutes.
Ms. Morgan attempted to assert a private cause of action against W.R. Grace based upon her allegations that W.R. Grace violated sections 376.30 to 376.319, Florida Statutes (1983).[2] This court has previously held that section 376.313(3), Florida Statutes (1991), does not create a private cause of action. See Mostoufi v. Presto Food Stores, Inc., 618 So.2d 1372 (Fla. 2d DCA 1993). The trial court followed Mostoufi and properly dismissed the count alleging violations of statutory rights. We note that the Fifth District has refused to follow Mostoufi. See Kaplan v. Peterson, 674 So.2d 201 (Fla. 5th DCA 1996). Even if Kaplan were the law in the Second District, we conclude that the pleadings in this case are so sparse that they would not state a claim for relief under the statutory cause of action. On remand, the trial court is still bound by Mostoufi. Nevertheless, if Ms. Morgan wishes to plead her statutory claim in greater detail in order to preserve the issue for future appellate review, she should be permitted to do so. At this point, the pleadings would not provide the supreme court with a meaningful record in which to exercise its discretion to review and resolve any conflict between Mostoufi and Kaplan.

6. Negligence.
Finally, Ms. Morgan attempted to allege a cause of action for negligence against W.R. Grace. The trial court dismissed this claim on the basis of the economic loss rule. Significantly, the trial court denied Ms. Morgan's request to amend her pleadings to state a cause of action after the supreme court issued its decision in Moransais v. Heathman, 744 So.2d 973 (Fla.1999).
We agree with the circuit court that Ms. Morgan's nebulous complaints have not adequately alleged a claim in negligence. We doubt, however, that the dreaded economic loss rule is an adequate basis to dismiss this count without leave to amend. Because we do not know the timing or the circumstances involved in this case, we cannot rule out a scenario that might survive the economic loss rule.
If anything is clear from the case law addressing the economic loss rule, it is that the application of the doctrine requires *508 a firm grasp of the facts in a particular case. See, e.g., Moransais, 744 So.2d 973; Monroe v. Sarasota County Sch. Bd., 746 So.2d 530 (Fla. 2d DCA 1999). This doctrine should not be employed to dismiss a case until the basic facts involved in Ms. Morgan's theory are established in the record as a matter of either pleading or evidence. This is particularly true now, given the supreme court's recent decisions limiting the effect of the economic loss rule as a bar to certain negligence claims. See, e.g., Moransais, 744 So.2d 973; Comptech Int'l, Inc. v. Milam Commerce Park, Ltd., 753 So.2d 1219 (Fla.1999). We conclude that the trial court erred in denying Ms. Morgan a final opportunity to allege a claim in negligence against W.R. Grace.
Accordingly, we reverse the trial court's dismissal of the complaint with prejudice. We remand in order to permit the plaintiff a final opportunity to plead a claim against W.R. Grace on theories other than those we have rejected in this opinion.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
FULMER and DAVIS, JJ., Concur.
NOTES
[1] The complaint and amended complaint did not attempt to allege any theory pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA). See 42 U.S.C. § 9601.
[2] These statutes were created in the Water Quality Assurance Act of 1983. See ch. 83-310, § 84, Laws of Fla. Because the complaint did not allege when W.R. Grace reclaimed the land, we do not know if these statutes existed at that time. Even if the Act existed, we do not know upon which version Ms. Morgan rests her claim since these provisions have been amended from time to time.