788 So.2d 1045 (2001)
COURTNEY ENTERPRISES, INC., a Florida corporation, Appellant,
v.
PUBLIX SUPER MARKETS, INC., a Florida corporation, Appellee.
No. 2D00-1485.
District Court of Appeal of Florida, Second District.
April 18, 2001.
Rehearing Denied May 21, 2001.
*1046 Robert L. Donald of the Law Office of Robert L. Donald, Fort Myers; and Vincent D. Sapp of Vincent D. Sapp, P.A., Fort Myers, for Appellant.
James P. Hahn of Hahn, McClurg, Watson, Griffith & Bush, P.A., Lakeland, for Appellee.
PARKER, Acting Chief Judge.
Courtney Enterprises, Inc. (Courtney), appeals the summary final judgment entered in favor of Publix Super Markets, Inc. (Publix), in this case involving damage to Courtney's real property. We reverse because we conclude that Courtney possesses a common law right to sue Publix for Courtney's diminution in property value.
This case involves the application of chapter 376, Florida Statutes, the Water Quality Assurance Act (WQAA), and the effect of rehabilitation immunity on an adjoining landowner's common law causes of action for damages resulting from dry-cleaning chemical contamination.[1] In October 1996 Courtney sued Publix and Bernard R. Kissinger,[2] contending that Courtney's property had been damaged by the dry-cleaning activities conducted on Publix's adjoining property. The complaint's general allegations reflect that since 1970 Publix has been in possession, under a 99 year lease, of a shopping center in Fort Myers, Lee County. Courtney's property adjoined Publix's property. From 1978 until 1996 Publix leased space in the shopping center to Kissinger, who operated a dry-cleaning establishment next to Courtney's property. Kissinger used an extremely *1047 toxic chemical known as perchloroethylene ("perc") in his dry-cleaning business. The substance is a hazardous waste under federal law, and a federal permit is required to use it.
In 1990 Courtney discovered that a tenant had contaminated the soil and water on its Lee County property with petroleum. Lee County subsequently assessed the petroleum contamination and installed remediation equipment on Courtney's premises. In 1994 Courtney learned from Lee County authorities about the perc contamination emanating from the Publix property. Courtney's president subsequently confronted Publix, and Publix had the perc contamination assessed. In 1996 Lee County removed the petroleum remediation equipment from Courtney's property because using the equipment would create a risk of drawing the perc contamination onto Courtney's property.
Courtney's complaint sought damages against Publix on the basis of negligence, nuisance, trespass, and strict liability. Each count alleged that the damages sustained by Courtney were "the material reduction in the value of its premises." In November 1996 Publix moved to dismiss Courtney's complaint or, in the alternative, to have the action abated while its application for clean-up under the WQAA was being processed by state officials. In April 1999 the trial court denied this motion.
Publix subsequently filed an answer raising as an affirmative defense that it had obtained in October 1998 a certificate from the state declaring that it was eligible for the dry-cleaning clean-up program under section 376.3078, Florida Statutes (1995). Publix alleged that its eligibility for this program immunized it from suit pursuant to section 376.3078(3). Courtney's reply to Publix's affirmative defenses stated that section 376.3078(3) only immunizes polluters from a suit to require rehabilitation, and another portion of the same chapter, section 376.313, Florida Statutes (1995), specifically states that damage actions may still proceed. Publix moved for summary judgment on two bases: first, it contended that it was entitled to complete immunity under section 376.3078(3) because it had satisfied the eligibility requirements of that subsection for the clean-up program; and second, that it was also entitled to immunity under section 376.3078(11), Florida Statutes (Supp.1998), because it had conducted a voluntary clean-up before qualifying for the program.
In opposition to the summary judgment, Courtney submitted two affidavits. The first was executed by the geologist employed by the Department of Environmental Protection (DEP) who is in charge of the Publix/Courtney site. He stated that he had met with Publix officials concerning a voluntary clean-up, but that Publix had never agreed to this and that he did not know whether Publix had met all conditions for continued eligibility. The DEP official's affidavit also stated that the state-administered clean-up program does not pay adjacent owners "for any lost rents, limitations on development, and the like." The affidavit explained that a scoring system is used by the DEP to decide the priority of clean-up, and that clean-up will only proceed as funded by the legislature based upon an established system of site scores. The affidavit further stated that there is no presently scheduled clean-up for the site, and "in my opinion it will be at least several years, if ever, before any state-administered clean-up occurs."
The second affidavit was from the president of Courtney Enterprises, which stated that Courtney had never been informed by Publix of the contamination that had occurred a few feet from its property, but found out from Lee County years after Publix discovered the problem. Publix had *1048 first learned of the problem in February 1991, when it found a 55-gallon drum of perc sitting outside the dry cleaners, and the surrounding area indicated leakage. Publix's delay in notification allowed the pollution to spread and also resulted in a useless petroleum contamination extraction system being installed on the Courtney property. Publix had never conducted any voluntary clean-up activities. The presence of the perc on Courtney's property greatly complicated the petroleum cleanup that was already underway, since "the existence of two different kinds of contamination on the property greatly increases the engineering and technical problems," with a commensurate increase in costs. It is probably impossible with existing technology to clean up the site.
The trial court granted summary final judgment to Publix, holding that Publix was indeed entitled to a full immunity from suit under sections 376.3078(3) and (11). The court held that "if parties such as Publix meet the applicable requirements [of section 376.3078], as Publix has done, they shall obtain immunity against all other claims, including the claims of Courtney, and to hold otherwise would render the Dry Cleaning Solvent Cleanup Program toothless." This appeal followed.
Even in the face of statutory immunity to prevent lawsuits for rehabilitation against owners who find and properly report to the state dry-cleaning chemical pollution on their property, the WQAA does not prohibit an adjoining landowner from pursuing a common law cause of action for diminution in the value of his land. Before the enactment of section 376.3078, this state recognized common law causes of action for a landowner whose land was damaged by pollution from an adjoining landowner. See, e.g., Davey Compressor Co. v. City of Delray Beach, 639 So.2d 595 (Fla.1994) (trespass, negligence, nuisance, and strict liability); Bunyak v. Clyde J. Yancey & Sons Dairy, Inc., 438 So.2d 891 (Fla. 2d DCA 1983) (strict liability, nuisance, and negligence); Windham v. Dep't of Transp., 476 So.2d 735 (Fla. 1st DCA 1985) (negligence, trespass, and nuisance). The plain language of the statutes simply does not justify the emasculation of common law causes of action against adjoining landowners for diminution in property value.
Section 376.3078 establishes a Hazardous Waste Management Fund to supply rehabilitation for contaminated dry-cleaning facility sites. Section 376.3078(3) provides, in pertinent part:
REHABILITATION LIABILITY.In accordance with the eligibility provisions of this section, no real property owner or no person who owns or operates, or who otherwise could be liable as a result of the operation of, a drycleaning facility or a wholesale supply facility shall be subject to administrative or judicial action brought by or on behalf of any state or local government or agency thereof or by or on behalf of any person to compel rehabilitation or pay for the costs of rehabilitation of environmental contamination resulting from the discharge of drycleaning solvents.
§ 376.3078(3), Fla. Stat. (1995). Subsection (11) also provides for immunity "from liability to any person, state or local government, or agency thereof to compel or enjoin site rehabilitation or pay for the cost of rehabilitation of environmental contamination, or to pay fines or penalties regarding rehabilitation," in the event the property owner conducts a voluntary clean-up of the contamination. § 376.3078(11), Fla. Stat. (Supp.1998). The plain language of sections 376.3078(3) and (11) suggests that immunity will only exist against those actions seeking rehabilitation or payment for *1049 the costs associated with rehabilitation of environmental contamination.
A court may not import words or meaning into a statute that does not appear on the face of the statute. McLaughlin v. State, 721 So.2d 1170, 1172 (Fla. 1998). In this case, the trial court concluded that sections 376.3078(3) and (11) should be read to grant immunity from all causes of action where damages for the diminution in value were sought because any other interpretation would render the sections "toothless." However, section 376.313(3) states that the remedies of the WQAA "shall be deemed cumulative and not exclusive," and that a suit for damages shall remain viable.
"It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) (emphasis in original) (citations omitted). Reading the two statutes together, it can be seen that common law causes of action survive the enactment of section 376.3078, and an injured landowner is only prohibited from bringing suit for site rehabilitation under the statute.
Furthermore, statutes should not be construed to abolish common law rights unless absolutely necessary. The common law causes of action asserted by Courtney in its complaint are among the oldest recognized by common law. See Prosser, Handbook of the Law of Torts (4th ed. 1971). "Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law." State v. Ashley, 701 So.2d 338, 341 (Fla. 1997) (quoting Thornber v. Ft. Walton Beach, 568 So.2d 914, 918 (Fla.1990)).
Publix's argument appears to be that since "damages" to real property are held to be the lesser of the repair costs or the diminution in value of the property, to allow an adjoining landowner such as Courtney to recover damages under a common-law cause of action would be a back-door way of allowing the landowner to recover rehabilitation costs, and section 376.3078 immunizes a real property owner from liability for rehabilitation costs. Therefore, under section 376.3078, all common law causes of action must be prohibited, despite the language of section 376.313 preserving these causes of action. We disagree.
In U.S. Steel Corp. v. Benefield, 352 So.2d 892, 894 (Fla. 2d DCA 1977), this court stated that there are two rules of damages for injury to land, one setting the damages as the difference in value caused by the injury, and a second setting the damages as the cost of repairing or restoring the property. Often the two measures of damages yield the same result. However, "the general rule appears to be that the cost of restoration will not be awarded if it is more than the diminution in market value." Id. Thus, a plaintiff may not recover the total cost of repair to his property if the cost of repair would exceed the diminution in the value of the property.
In Crown Cork & Seal Co. v. Vroom, 480 So.2d 108, 112 (Fla. 2d DCA 1985), this court applied the Benefield holding to limit the damages of an adjoining landowner to the reduction in value of his property caused by his neighbor's pollution of the groundwater because the clean-up costs would have exceeded the reduction in value of the property. So the measure of damages under the common law in cases such as the instant one is either the diminution of value or the restoration costs, but not restoration costs that exceed the diminution in value of the property. *1050 Section 376.3078 immunizes a real property owner from suit for restoration costs; it should not be read to eliminate common law causes of action altogether but to limit damages in those actions to diminution in property value. It is important to note that, in this case, Courtney has not sought damages for restoration costs. Rather, the complaint is very specific in seeking only the diminution in the value of Courtney's property.
We reject Publix's contention that this court limited the private causes of action available to adjoining landowners to those actions seeking rehabilitation of property damaged by contamination in Mostoufi v. Presto Food Stores, Inc., 618 So.2d 1372, 1376-77 (Fla. 2d DCA 1993). In Mostoufi, the plaintiff was a successor landowner suing his predecessor in title under section 376.313(3) for strict liability for damages resulting from petroleum contamination of the plaintiff's real property. Id. at 1373. This court affirmed the trial court's dismissal of the action, holding that section 376.313(3) did not create a cause of action for damages resulting from contamination and that the doctrine of caveat emptor prevented the plaintiff from asserting any common law causes of action. Id. at 1377. This court stated:
The key to our conclusion regarding the statute is that it is clearly framed so as not to "prohibit" a person from bringing a cause of action for any damages that may accrue because of a discharge of pollutants. Because the statute is framed so as not to "prohibit" bringing a cause, we conclude we should not interpret the statute as "creating" a new cause of action that did not theretofore exist. It seems clear to us that the intent of the statute is to insure that it is not interpreted as preempting any private rights that were already in existence.
Id. at 1376-77 (emphasis added) (citations omitted).
Under Mostoufi, whether a plaintiff can or cannot state a cause of action under 376.313(3) does not undermine any common law causes of action that he may possess. Here Courtney has not even asserted a cause of action under the WQAA. Rather, it has asserted common law causes of action, which by the very terms of section 376.313(3) are preserved. When the legislature enacted 376.3078 in 1994 (after Mostoufi was decided) to grant immunity only from suit for rehabilitation costs, it would have understood that a plaintiff would still be able to bring suit for other types of damages. This is perfectly consistent with the legislature's decision to leave the savings clause in section 376.313(3), even though other portions of the statute were amended by the 1994 legislation.
Because Publix's immunity under section 376.3078 does not extend to the common law causes of action asserted by Courtney, we reverse the trial court's order granting summary final judgment in this case. While we do not agree with the trial court's construction of the WQAA, we do not disagree with the trial court's characterization of this interpretation of the statute as rendering the immunity clause "toothless." We find it troublesome that our decision permitting Courtney to present its case to a jury may result in a benefit to Courtney for which Publix may not be able to seek recovery in the event that the state eventually provides the necessary funds to cause Courtney's property to be cleaned up. However, we conclude that this issue can only be addressed by the legislature.
Reversed and remanded.
SILBERMAN, J., and CAMPBELL, MONTEREY, (Senior) Judge, concur.
NOTES
[1] For a general overview on the WQAA and causes of action available to adjoining landowners for dry-cleaning contamination, see Gary K. Hunter, Jr., Statutory Strict Liability for Environmental Contamination: A Private Cause of Action to Remedy Pollution or Mere Legislature Jargon?, 72 Fla. B.J. 50 (Jan. 1998); Michael R. Goldstein, Riding the Solvents Sea of Dry Cleaners: How the Environment, the Economy and the Citizens of Florida Have Been Disserved by House Bill 2817, 69 Fla. B.J. 54 (May 1995).
[2] Kissinger subsequently filed for bankruptcy, and his liability was eliminated.